**Affirmed and Opinion filed September 16, 2014.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-13-00330-CR

**JOR'DAN JACQUEINN MAURICE LEWIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 11CR2636**

## O P I N I O N

Appellant Jor'dan Jacqueinn Maurice Lewis appeals his conviction for capital murder, which allegedly occurred when he was fourteen years old. In his first two issues, appellant asserts the trial court erred in its submission of accomplice witness instructions to the jury. In his third issue, he challenges the sufficiency of the evidence. And in his fourth through seventh issues, he contends that the imposition of his sentence—mandatory life in prison with a chance of

parole in forty years—violated several provisions of the United States and Texas constitutions.  We affirm.

## I.  Background

On May 29, 2011, the complainant was discovered in her home with over 25 stab wounds from three different kitchen knives.  None of the wounds, however, were apparently of a defensive nature, suggesting she may have known her assailant.  There were also no signs of forced entry at the house.  The complainant lived across the street from appellant's grandmother's house, where appellant himself had lived until a few months prior to the murder.  One of complainant's neighbors testified to having seen complainant in her front yard earlier that day, then later seeing appellant at the complainant's front door, but not seeing the complainant after that.  Appellant's palm print was discovered on a cabinet above the position where the complainant's body was found.  Areas of the home had been ransacked, and jewelry belonging to the complainant was missing.

According to several witnesses, appellant moved into an apartment with two older males when he was fourteen.  Kimberly Jackson testified at trial that she met appellant at the apartment.  On the day of the murder, she overheard appellant asking one of the older male residents to drive him "to get some money or hit a lick."[1]  The older male agreed when appellant offered him "gas money."  According to Jackson, the other, older male resident wanted everyone to leave the apartment around that time and requested that appellant and the older male take Jackson with them.  The older male drove and parked his car around the corner from a particular house as appellant directed.  Appellant left the vehicle for about fifteen to twenty minutes, after which he signaled Mills to drive up to the

---

[1] A police officer testified that "hit a lick" was a common phrase meaning to perform a robbery or burglary.

complainant's house. Appellant then grabbed a pillowcase from behind some shrubs and got into the car. He first said that he had killed someone and then indicated he was joking and "[s]he wasn't there." When they returned to the apartment, appellant and the two older males took money and jewelry out of the pillowcase and divided it between them.

Another young female testified that she had met appellant at the apartment several months before. On May 29, she noticed appellant and one of the older males were wearing jewelry she had never seen them wear before. Appellant also gave her a gold necklace that she thought he had probably stolen. Additionally, appellant said to her, "You know I killed somebody before, right?" but then said "I'm just playing." Another female witness also testified that appellant gave her jewelry. She later turned the jewelry over to the police.

On June 7, ten days after the murder, appellant's grandmother accompanied him to a police station where he turned himself in to police. At the time, he had a jewelry box in his pocket. Appellant's grandmother also turned items of jewelry over to the police. The complainant's daughter identified several pieces of the jewelry held or dispensed by appellant as having belonged to her mother.

A jury found appellant guilty of capital murder. The trial court was then obligated under Penal Code section 12.31(a)(1) to sentence him to life in prison with a chance of parole in 40 years. Tex. Pen. Code § 12.31(a)(1).

## II. Jury Charge Complaints

In his first two issues, appellant complains that the accomplice witness instruction provided in the jury charge was deficient because it failed to instruct on a theory of conspirator liability as a basis for Kimberly Jackson being considered an accomplice witness and it omitted as a basis for treating Jackson as an

accomplice her possible culpability for a lesser included offense. An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed . . . ." Tex. Code Crim. P. art. 38.14; *see also Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). If a prosecution witness is an accomplice, the trial court must instruct the jury accordingly. *See Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).[2]

Here, the trial court's instructions regarding accomplice witnesses read as follows:

> You are instructed that an "accomplice," as the term is hereinafter used, means any person connected with the crime charged, as a party thereto, and includes all persons who are connected with the crime by unlawful act or omission on their part transpiring either before or during the time of the commission of the offense.
>
> . . . .
>
> Upon the law of accomplice witness testimony, you are instructed that a person who has participated with someone else before, during or after the commission of a crime, is an accomplice witness. In such a case, there must be some evidence of an affirmative act on the witness'[s] part to assist in commission of the

---

[2] An accomplice-witness instruction should inform the jury whether the witness is an accomplice as a matter of law or might be one as a matter of fact. *See Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). A witness is an accomplice as a matter of law when he or she has been charged with the same offense as the defendant or a lesser-included offense, or "when the evidence clearly shows that the witness could have been so charged." *Druery*, 225 S.W.3d at 499, *Cocke*, 201 S.W.3d at 747–48. In regards to matter-of-law accomplices, the charge must inform the jury that their testimony has to be corroborated. *See Druery*, 225 S.W.3d at 498–99. However, when there is conflicting or inconclusive evidence concerning the witness's complicity, the charge must ask the jury to (1) decide whether the witness is an accomplice, and (2) if so, apply the corroboration requirement. *Id.*

4

offense. If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice witness as a matter of law. A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even concealed it. The witness's presence at the scene of the crime does not render that witness an accomplice witness.

Now, if you find from the evidence that Kimberly Jackson was an accomplice, then you are further instructed that you cannot convict the Defendant upon Kimberly Jackson's testimony, unless you first believe that testimony is true and shows the guilt of the Defendant as charged in the indictment, and then you cannot convict the Defendant unless Kimberly Jackson's testimony is corroborated by other evidence tending to connect the Defendant with the offense charged. The corroboration is not sufficient if it merely shows the commission of an offense, but it must tend to connect the Defendant with its commission, and then from all the evidence, you must believe beyond a reasonable doubt that the Defendant is guilty of the offense charged against him, or if you have a reasonable doubt thereof, you will acquit the defendant.

In his first issue, appellant relies on the Court of Criminal Appeals' recent *Zamora v. State* opinion, which was released after the trial in this case, wherein the court explicitly held an accomplice witness instruction must be given when the evidence raises the question of whether a witness is an accomplice under a party-conspiracy theory. 411 S.W.3d 504, 512 (Tex. Crim. App. 2013); *see also* Tex. Code Crim. Proc. art. 38.14 (governing accomplice witness instructions); Tex. Penal Code § 7.02(b) (concerning criminal culpability for party as co-conspirator). The *Zamora* Court did not specify what an instruction in such a case needed to say, just that there needed to be such an instruction. The court noted, however, that courts frequently tailor the accomplice witness instruction to fit the circumstances presented in the particular case. *Zamora*, 411 S.W.3d at 510-11. The court also noted that the accomplice witness instructions in that case included only reference to a direct-party theory and not a conspiracy theory of party liability. *See id*. at

508.

Appellant complains that the instruction provided did not fully explain that Jackson could be considered an accomplice witness if she participated in a conspiracy with appellant.[3]  Appellant additionally points out that the charge appears to require the witness have performed an affirmative act in furtherance of the crime charged, which is not a requirement for conspiracy liability under section 7.02(b).  Tex. Penal Code § 7.02(b).

In his second issue, appellant points out a second problem with the accomplice witness instructions, i.e., the statement that:  "If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice witness as a matter of law."  As *Zamora* and earlier cases point out, a witness can be an accomplice witness as a matter of law if he or she could have been charged with the same offense as the defendant *or a lesser included offense*.  411 S.W.3d at 510.

For its part, the State does not specifically deny that if there was evidence Jackson was involved in a conspiracy with appellant, or could have been charged with a lesser included offense, that a different instruction should have been given. Instead, the State argues (1) there was no evidence to support any accomplice

---

[3] Appellant further suggests that a proper instruction would have looked like the following passage from the San Antonio Court of Appeal's *De La Rosa* opinion, as quoted in *Zamora*:

> [I]f the witness and the accused were coconspirators in a conspiracy to commit a felony other than the crime with which the accused is charged, the accused committed the charged offense in furtherance of that conspiracy, and the charged offense was one that should have been anticipated by the witness as a result of carrying out the conspiracy, the witness is an accomplice.

*Zamora*, 411 S.W.3d at 511; *DeLa Rosa v. State*, 919 S.W.2d 791, 794 (Tex. App.—San Antonio 1996, pet. ref'd).

witness instruction[4], and (2) even if a specific instruction was required but not given, the error did not result in egregious harm to appellant. We need not reach appellant's contentions regarding error in the accomplice witness instructions or the State's arguments regarding whether such an instruction needed to be given because we find that even if an instruction was required and the one given contained error, such error was harmless. *See* Tex. R. App. P. 44.2(b) (providing that any unconstitutional error "that does not affect substantial rights must be disregarded").

The degree of harm required for reversal depends on whether an objection to the error was made at trial. If no objection was made, we may reverse only if the error resulted in "egregious harm" such that appellant was denied a "fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *Neal v. State*, 256 S .W.3d 264, 278 (Tex. Crim. App. 2008). If an objection was made at trial, we then determine whether appellant has demonstrated "some harm" from the error. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). Egregious harm is the proper standard of review here, because appellant did not object to the charge on this ground below. *See Almanza*, 686 S.W.2d at 174. In determining whether a defendant was egregiously harmed, we must review "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Under this standard, improper omission of an accomplice witness instruction is generally considered harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render

---

[4] The State suggests that there was insufficient evidence tending to show Jackson was part of a conspiracy or otherwise participated in any crime and that her mere presence at the crime scene was not enough to make her an accomplice.

the State's overall case for conviction clearly and significantly less persuasive." *Herron*, 86 S.W.3d at 632. In assessing the strength of non-accomplice evidence, we examine its reliability or believability and the degree to which it connects the defendant to the crime. *Id.*

Although we presume for the sake of this analysis that the jury charge contained error in the submission of the accomplice witness instructions, it at least presented the concept to the jury that Jackson may have been an accomplice and thus her testimony may have needed corroboration. More importantly, the evidence beyond that offered in Jackson's testimony was strongly indicative of appellant's guilt. A neighbor testified to having seen complainant alive at her house on the day of the murder, then seeing appellant at the house before complainant was discovered dead in her home. It was established that complainant and appellant knew each other and appellant had been inside complainant's house before.[5] Evidence found at the scene indicated the complainant likely knew her assailant as there was no sign of forced entry at the home or of defensive wounds on the complainant. There was additional evidence that appellant possessed a significant amount of the complainant's jewelry after the murder, and indeed, he had one of her jewelry boxes on his person when arrested. Appellant's palm print also was discovered on a cabinet above the complainant's body.[6]

As stated, this evidence was strongly indicative of appellant's guilt and not so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. *See Herron*, 86 S.W.3d at 632. Accordingly, we

---

[5] There was testimony appellant had visited with complainant's grandson.

[6] Appellant insists that the variety of angles used to stab the complainant suggests there may have been multiple assailants. However, this fact can just as easily be explained by appellant and the complainant's movements during the attack. Regardless, the possibility of other assailants does not significantly diminish the evidence of appellant's guilt.

find any error in the trial court's accomplice witness instructions was not egregiously harmful. *See Almanza*, 686 S.W.2d at 171. We overrule appellant's first two issues.

### III. Sufficiency of the Evidence

In his third issue, appellant contends that the evidence was insufficient to prove capital murder based on the commission of murder during a robbery. In assessing whether evidence is sufficient to support a conviction, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We may not substitute our judgment for that of the fact finder; rather, we defer to the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

Texas Penal Code section 19.03(a) defines capital murder in relevant part as the intentional murder of an individual in the course of a robbery. Tex. Pen. Code § 19.03(a)(2). A person commits murder if he "intentionally or knowingly causes the death of an individual." *Id*. § 19.02(b)(1). A person commits robbery if "in the course of committing theft . . . and with intent to obtain or maintain control of the property he . . . intentionally, knowingly, or recklessly causes bodily injury to another." *Id*. § 29.02(a)(1). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." *Id*. § 31.03(a).

9

Appellant specifically contends that the mere fact property was stolen from the complainant does not by itself prove that the murder occurred during the course of a robbery. In support of this contention, appellant relies primarily on *White v. State*, in which the Court of Criminal Appeals explained that "the point at which appellant formulated his intent to take his complainant's property is critical to differentiating, in the abstract, between his commission of capital murder in the course of committing robbery and his commission of a first degree murder, followed by theft from a corpse, a third degree felony." 779 S.W.3d 809, 815 (Tex. Crim. App. 1989). Based on this principle, appellant suggests possible motives for the murder other than a preexisting intent to steal, including that the complainant may have resisted a sexual advance by appellant, or the complainant may have threatened to tell appellant's grandmother after smelling alcohol or marijuana smoke on his person.

These farfetched alternatives, however, do not cast any real doubt on the evidence indicating appellant had formulated an intent to rob the complainant by the time he committed the murder. Evidence demonstrated appellant was planning to "hit a lick" when he went to the complainant's house, a euphemism for robbery or burglary.[7] He sought a ride to the house but had the driver wait around the corner from the complainant's house, a clear indication that he had an intention to do something nefarious while at the house. And he took a significant amount of jewelry from her home. This evidence is sufficient to support the conclusion that appellant committed the murder with the intent to rob the complainant. *See McGee*

---

[7] Appellant suggests that his use of the phrase could just as easily have indicated that he intended to burglarize the complainant's home, not commit robbery of the complainant herself. However, even if appellant initially only intended to burglarize complainant's home, the evidence supports the conclusion that once he got inside and discovered the complainant was home, appellant's intent became to rob her when he took a knife and stabbed her in order to take her jewelry.

*v. State*, 774 S.W.3d 229, 234 (Tex. Crim. App. 1989) (explaining that evidence a robbery occurred immediately after murder is sufficient to support conviction for capital murder); *see also Cooper v. State*, 67 S.W.3d 221, 223-24 (Tex. Crim. App. 2002) (analyzing *McGee* and concluding that "[t]he absence of additional evidence will not defeat the natural inference allowed by *McGee*; even if there is no other evidence of a nexus, that inference will support a conviction."). We overrule appellant's third issue.

## IV. Constitutional Complaints on Sentencing

In issues four through seven, appellant contends that the imposition of his sentence—mandatory life in prison with a chance of parole in forty years—violates several provisions of the United States and Texas constitutions. Specifically, appellant contends in these four issues that the "mandatory and automatic" sentence under Penal Code section 12.31(a)(1) for a minor convicted of capital murder (life in prison with a chance of parole) violates the Eighth Amendment prohibition on cruel and unusual punishment, the Fourteenth Amendment guarantee of due process, the Article I, section 13 prohibition on cruel or unusual punishment, and the Article I, section 19 guarantee of "due course of law." *See* U.S. Const. amend. VIII, XIV; Tex. Const. art. I, §§ 13, 19; Tex. Pen. Code § 12.31(a)(1). We will consider each in turn.

In his fourth issue, appellant advocates for an extension of the United States Supreme Court's reasoning in *Miller v. Alabama*, in which the Court held that a mandatory sentence for a minor of life in prison *without parole* violated the Eighth Amendment because it ignored inherent differences between minors and adults and completely disregarded the possibility of rehabilitation. 132 S. Ct. 2455, 2468 (2012). However, since appellant filed his brief, the Texas Court of Criminal Appeals has explained, in *Lewis v. State*, that the holding in *Miller* was very

11

narrow and refused to extend it to the precise situation presented here: a mandatory sentence for a minor of life in prison with a chance of parole. 428 S.W.3d 860, 863-64 (Tex. Crim. App. 2014). We are bound in criminal cases to follow decisions of the Court of Criminal Appeals. *See Mason v. State*, 416 S.W.3d 720, 728 n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("When the Court of Criminal Appeals has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation under the dictates of vertical stare decisis."); *see also State of Texas ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates.").[8]

The *Miller* and *Lewis* courts confined their analysis to the Eighth Amendment, but appellant makes further contentions under the Fourteenth Amendment as well as two Texas provisions. In his fifth issue, he specifically asserts that the mandatory sentence violated his Fourteenth Amendment due process rights because it precluded consideration of mitigating evidence on punishment. In support, he cites two United States Supreme Court decisions that do not involve the rights of minors or even criminal prosecutions, and he provides little analysis to connect the pronouncements in those cases to the current context. *See Stanley v. Illinois*, 405 U.S. 645, 657-58 (1971) (holding unwed father was entitled to hearing on his fitness as parent before his children could be taken from

---

[8] In a reply brief, appellant acknowledges the holding in *Lewis* rejected the very conclusion appellant urges here. He goes on, however, to suggest several ways in which he believes the *Lewis* court failed in its analysis, including allegedly ignoring parts of *Miller* as well as recent brain development research, which was not introduced into evidence in the present case. We nonetheless are bound by the *Lewis* precedent. *See Clawson*, 465 S.W.2d at 168; *Mason*, 416 S.W.3d at 728 n.10.

12

him after the death of the children's mother); *Bell v. Burson*, 402 U.S. 535, 542-43 (1970) (holding driver's licenses could not be taken from motorists under particular statutory scheme without procedural due process simple because the motorist was involved in an accident and was uninsured). Apart from these easily distinguishable cases, appellant offers little support for his contention.

A number of Texas Courts of Appeal, including this one, have determined mandatory sentencing statutes do not violate due process. *See, e.g., Moore v. State*, 54 S.W.3d 529, 544 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding mandatory life sentence did not violate defendant's due process rights and defendant had no right to present mitigating evidence); *Williams v. State*, 10 S.W.3d 370, 372–73 (Tex. App.—Tyler 1999, pet. ref'd) (rejecting due process challenge to mandatory life sentence); *Buhl v. State*, 960 S.W.2d 927, 935 (Tex. App.—Waco 1998, pet. ref'd) (holding mandatory life sentence did not violate due process because defendant was unable to present mitigating evidence); *Cardona v. State*, 768 S.W.2d 823, 827 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (explaining that legislature had rational basis for mandatory sentence and thus did not violate due process). Because appellant offers no reason for deviating from this line of cases, we overrule his fifth issue.

In his sixth issue, appellant argues that his mandatory sentence violates the prohibition on "cruel or unusual punishment" in Article I, section 13 of the Texas Constitution. Tex. Const. art. I, § 13. In arguing that rights under section 13 should be interpreted more broadly than rights under the Eighth Amendment, appellant notes that section 13 prohibits "cruel *or* unusual punishment," whereas the Eighth Amendment prohibits "cruel *and* unusual punishment." Appellant acknowledges, however, that the Court of Criminal Appeals has held that there is no significance to the differences in phrasing. *See Cantu v. State*, 939 S.W.2d 627,

13

645 (Tex. Crim. App. 1997) (refusing to interpret the language of the Texas Constitution as more expansive that of the federal constitution). Although appellant encourages this court nevertheless to recognize a distinction, we are bound by the decisions of the higher court. *See Clawson*, 465 S.W.2d at 168; *Mason*, 416 S.W.3d at 728 n.10.

And in his seventh issue, appellant contends that his sentence violated Article I, section 19's "due course of law" guarantee. Tex. Const. art. I, § 19. As appellant recognizes, Texas courts consistently have found no distinction between the rights afforded by this provision and those afforded by the due process clause of the Fourteenth Amendment. *See Fleming v. State*, 341 S.W.3d 415, 416 (Tex. Crim. App. 2011) (Keasler, J., concurring) ("[T]his Court and the Texas Supreme Court have interpreted the due course of law provision to provide the same procedural rights and protections as the Due Process Clause."); *Fleming v. State*, 376 S.W.3d 854, 857 (Tex. App.—Fort Worth 2012) ("[T]his court and the majority of Texas courts of appeals have repeatedly held that the due course of law provision provides the same protections as the federal Due Process Clause."), *aff'd*, No. PD-1250-12, 2014 WL 2895889 (Tex. Crim. App. June 8, 2014); *State v. Vasquez*, 230 S.W.3d 744, 750-51 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding due course of law clause does not provide a greater level of protection than the Due Process Clause regarding the State's loss or destruction of evidence in a criminal prosecution). Appellant offers no discernable reason for finding a distinction in this case. Accordingly, we overrule his seventh issue.

14

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/          Martha Hill Jamison
                    Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Publish — TEX. R. APP. P. 47.2(b).