FILED IN
COURT OF CRIMINAL APPEALS

June 18, 2015

ABEL ACOSTA, CLERK

PD-0568-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/17/2015 3:38:05 PM
Accepted 6/18/2015 2:21:12 PM
ABEL ACOSTA
CLERK

## NO. PD-0568-15

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

# AT AUSTIN

-------------------------------------------------------------------

## NO. 14-14-00015-CR

# IN THE COURT OF APPEALS FOR THE

# FOURTEENTH DISTRICT OF TEXAS

# AT HOUSTON

-------------------------------------------------------------------

**HERBERT RAY WILSON,**                      **APPELLANT**

**V.**

**THE STATE OF TEXAS,**                      **APPELLEE**

-------------------------------------------------------------------

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
-------------------------------------------------------------------

**Danny K. Easterling**
Easterling & Easterling, PC
Texas Bar No. 06362100
1018 Preston, 6th Floor
Houston, TX 77002
(713)228-4441
E-mail: eaepc@swbell.net

Counsel for Appellant

**ORAL ARGUMENT REQUESTED.**

# STATEMENT REGARDING ORAL ARGUMENT

The appellant requests oral argument because important constitutional issues are presented.

# LIST OF INTERESTED PARTIES

Herbert Ray Wilson            Appellant, Defendant in trial court

Danny K. Easterling            Appellant's counsel at trial and on
1018 Preston, Suite 600            appeal
Houston, TX 77002

Devon Anderson            Harris County District Attorney
1201 Franklin, Suite 600
Houston, TX 77002

Bridget Holloway            Assistant District Attorney

Hon. Ruben Guerrero            Judge, 174TH district Court
                                            Harris County, Texas

# TABLE OF CONTENTS

Statement Regarding Oral Argument     I

List of Interested Parties     I

List of Authorities     iv

Statement of the Case     1

Statement of Procedural History     3

Questions Presented     3

    (1)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate U.S. CONST. Amend. VIII?

    (2)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate TEX. CONST. Art. I, §13?

    (3)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate the due process clause of U.S. CONST. Amend. XIV?

    (4)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate the due course of law provision of TEX. CONST. Art. I, §19?

Argument     4

Reasons for Review of Question One     4

    A. Core Eighth Amendment Principles     4

       (1) Evolving Standards                5

       (2) The Importance of Having a Punishment Factfinder
       Consider Mitigating Factors      6

   B.   From *Roper* to *Graham* to *Miller*      7

   C.  The Flawed Texas Response to *Miller*      8

   D.  The Illusory Benefit of Parole in Forty Years    10

Reasons for Review of Question Two      11

Reasons for Review of Questions Three and Four     13

   A.  The Due Process "Right to Be Heard"     13

   B.  The Texas Counterpart to Due Process     13

   C.  The Court of Appeals' Error     15

Prayer for Relief      17

Certificate of Compliance      17

Certificate of Service      18

Appendix: Court of Appeals' Memorandum Opinion and Judgment

# LIST OF AUTHORITIES

**Cases**                                                                 **Page**

*Armstrong v Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)          14

*Bell v. Burson*, 402 U.S. 535,91 S.Ct. 1586,29 L.Ed.2d 90 (1970)          14-16

*California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987)          6

*Cantu v. State*, 939 S.W.2d 627 (Tex. Crim. App. 1997)          12

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532,
    105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)          16

*Eddings v. Oklahoma*, 455 U.S. 104,102 S.Ct. 869, 71 L.Ed.2d 1(1982)          6

*Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587,
    298 S.W.2d 93, 96 (1957)          12

*Fleming v. State*, 376 S.W.3d 854 (Tex. App. – Fort Worth 2012)          15

*Graham v. Florida*, 560 U.S. __, 130 S.Ct. 2011,
    176 L.Ed.2d 825 (2010)          5, 7-8, 10, 16

*Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680,
    115 L.Ed.2d 836 (1991)          8

*Heitman v. State*, 815 S.W.2d681 (Tex. Crim. App. 1991)          11

*Joint AntiFascist Comm. v. McGrath*, 341 U.S. 123, 71 S.Ct. 624,
    95 L.Ed.2d 817 (1951 )(Frankfurter, J., concurring)          13

*Lewis v. State*, 448 S.W.3d 138 (Tex. App. – Houston [14th Dist.]
    2014, pet. ref'd)          3, 9, 15

*Lewis and Nolley v. State*, 428 S.W.3d 860 (Tex. Crim. App. 2014),
    *cert. denied sub nom. Nolley v. Texas*, __ U.S. __, 135 S.Ct. 256,
    190 L.Ed.2d 190 (2014)          3, 9

*Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)     6

*Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)     13

*Miller v. Alabama,* __ U.S. __, 132 S.Ct. 2455,
    183 L.Ed.2d 407 (2012)     1-2, 5, 11-13, 16

*Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988)     6

*Morter v. State,* 551 S.W.2d 715 (Tex. Crim. App. 1977)     12

*Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)     11

*Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)     5, 7-8

*Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)     6

*Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971)     14-16

*State v. Hardy,* 963 S.W.2d 516 (Tex. Crim. App. 1993)     12

*Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)     5

*Wilson v. State,* 348 S.W.3d 132 (Tex. App. - Houston
    [14th Dist.] 2011, pet. ref'd), *vacated and remanded,*
    *Wilson v. Texas,* __ U.S. __, 133 S.Ct. 108, 184 L.Ed.2d 5 (2012)     2

*Wilson v. State,* 2012 WL 6484718 (Tex. App. -
    Houston [14th Dist.], No. 14-09-01040-CR, December 13, 2012)     2

**Constitutional Provisions, Statutes, and Rules**

TEX. CONST. Art. I, §13     2, 11

TEX. CONST. Art. I, §19     3, 15

TEX. GOVT. CODE §311.021(2)     12

TEX. PENAL CODE §12.31                                        2

U.S. CONST. Amend. VIII                                   2-8, 11

U.S. CONST. Amend. XIV                                   3, 13-16

**TO THE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW the appellant, Herbert Ray Wilson (hereinafter "Wilson"), through the undersigned court-appointed counsel, and respectfully requests that this Court grant discretionary review of the decision in this cause by the Court of Appeals for the Fourteenth District of Texas, for reasons set forth as follows.

## STATEMENT OF THE CASE

Wilson was indicted for Capital Murder, in violation of TEX. PENAL CODE §19.03(CR II-6).[1] A jury found Wilson guilty of Capital Murder). Because Wilson was seventeen at the time of the offense, the only punishment available was confinement for life in the Texas Department of Criminal Justice, Correctional Institutions Division, without the possibility of parole. The district court judge immediately assessed that punishment without conducting any evidentiary hearing on punishment. Wilson appealed, alleging *inter alia* that the mandatory, and thus automatic, sentence of life without parole violated U.S. CONST. Amend. VIII. The Court of Appeals affirmed the judgment, and this Court refused discretionary review. *Wilson v. State*, 348 S.W.3d 132 (Tex. App. - Houston [14th Dist.] 2011, pet. ref'd).

Following the decision in *Miller v. Alabama*, __ U.S. __, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012)(which had not been available at the time this Court refused discretionary review), the Supreme Court granted a writ of certiorari, vacated the

---

[1] The clerk's record, containing court documents, is designated "CR" herein. The court reporter's record is designated "RR" with Roman numerals for volume numbers.

sentence, and remanded for further proceedings. *Wilson v. Texas*, __ U.S. __, 133 S.Ct. 108, 184 L.Ed.2d 5 (2012). The Court of Appeals then remanded this cause to the district court for a new punishment determination. *Wilson v. State*, 2012 WL 6484718 (Tex. App. - Houston [14th Dist.], No. 14-09-01040-CR, December 13,2012).

While this cause was pending in the state district court, the Texas Legislature addressed the need for revision of TEX. PENAL CODE §12.31 in the wake of *Miller v. Alabama*. In the regular session a bill promoted by the governor proposed that there be a mandatory (and thus automatic) sentence of life imprisonment, with the possibility of parole after forty years. A competing proposal to provide for a range of punishment was defeated in committee. Time ran out in the general session, and the governor made the automatic life with parole proposal one of the items to be included in a called special session. This time the proposal passed, and the new statute was made applicable to all cases still pending in various stages of direct appeal.

Meanwhile Wilson argued in the district court that an automatic sentence of life, with the possibility of parole, still presented an Eighth Amendment problem, given that there was no mechanism for consideration of mitigating evidence, for individualized sentencing, or even to preserve evidence for future use in parole proceedings. These same problems also violated TEX. CONST. Art. I, §13, Wilson

2

argued. Wilson further argued that the denial of a hearing violated the due process clause of U.S. CONST. Amend. XIV and the counterpart guarantee of "due course of law" under TEX. CONST. Art. I, §19. The district court judge at least let Wilson memorialize some of the possible mitigating evidence in a brief hearing, but the judge was helpless to give such evidence any weight. As the statute required, the district court judge to assess punishment at life imprisonment, with no possibility of parole until at least forty years had elapsed. Wilson gave notice of appeal.

The Court of Appeals affirmed the judgment and sentence in a memorandum opinion. The Court of Appeals considered the result to be dictated by this Court's decision in *Lewis and Nolley v. State*, 428 S.W.3d 860 (Tex. Crim. App. 2014), *cert. denied sub nom. Nolley v. Texas*, __ U.S. __, 135 S.Ct. 256, 190 L.Ed.2d 190 (2014) and by the Court of Appeals' decision in *Lewis v. State*, 448 S.W.3d 138 (Tex. App. – Houston [14th Dist.] 2014, pet. ref'd).[2]

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its decision and delivered its memorandum opinion on April 16, 2015. No motion for rehearing was filed. This Court extended the time for filing a petition for discretionary review until June 17, 2015.

## QUESTIONS FOR REVIEW

---

[2] A petition for writ of certiorari was filed by Jor'dan Lewis in May, 2015. It is pending as Number 1407-14 in the Supreme Court.

This petition presents four questions for review:

(1)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligility in forty years, did not violate U.S. CONST. Amend. VIII?

(2)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate TEX. CONST. Art. I, §13?

(3)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate the due process clause of U.S. CONST. Amend. XIV?

(4)    Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate the due course of law provision of TEX. CONST. Art. I, §19?

## ARGUMENT

### REASONS FOR REVIEW OF QUESTION ONE

**Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate U.S. CONST. Amend. VIII?**

### A.  Core Eighth Amendment Principles

The Eighth Amendment to the United States Constitution states:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

The "cruel and unusual punishments" clause applies to state court cases through the due process clause of U.S. CONST. Amend. XIV. Interpretation of the Eighth Amendment has been guided by some key principles developed in case law, including

4

two which are particularly relevant here: (1) the "evolving standards" doctrine, and (2) the importance of having a punishment factfinder consider mitigating evidence.

## (1) Evolving Standards

Application of the Eighth Amendment is guided by "the evolving standards of decency which mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 596 (1958). Three concurring justices in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) observed:

> Society changes. Knowledge accumulates. We learn, sometimes, from our mistakes. Punishments that did not seem cruel and unusual at one time may, in the light of reason and experience, be found cruel and unusual at a later time ...

*Graham* demonstrated that evolving standards may be expressed in the expansion of concepts from one application to another. In *Graham* a body of scientific knowledge concerning how juveniles differed from adults was extended from a case where a juvenile was given the death penalty, *i.e. Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), to a case where a sentence of life imprisonment without parole was assessed. That same body of scholarship then contributed to an extension of *Graham*, a non-homicide case, to a homicide case in *Miller v. Alabama*. The next step which Wilson advocates is really just an application of the lessons of *Miller*.

5

## (2) The Importance of Having a Punishment
## Factfinder Consider Mitigating Factors

The Supreme Court has recognized, in the context of death-penalty cases, that a jury must have a vehicle for consideration of mitigating circumstances. *Smith v. Spisak*, 558 U.S.139, 130 S.Ct. 676, 175 L.Ed.2d 595 (2010), considering the application of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) to an Ohio death-penalty case, commented:

> The rule the Court set forth in *Mills* is based on two well-established principles. First, the Constitution forbids imposition of the death penalty if the sentencing judge or jury is "precluded from considering, *as a mitigating factor*, any aspect of a defendant's character and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 486 U.S., at 374, 108 S.Ct. 1860 [quoting *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), in turn quoting *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion)]. Second, the sentencing judge or jury "may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" *Mills*, 486 U.S., at 374-375, 108 S.Ct. 1860 [quoting *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), in turn quoting *Eddings, supra*, at 114, 102 S.Ct. 869.]

The concept of individualized mitigating evidence was articulated in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989):

> Underlying *Lockett* and *Eddings* is the principle that punishment should be directly related to the personal culpability of the criminal defendant. If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, "evidence about the defendant's background and character is relevant because of the belief, long held by society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems,

may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 547, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987).

A characteristic of a mandatory sentencing scheme, which allows only one predetermined punishment following conviction for a particular crime, is that the punishment becomes automatic. Neither the judge nor the jury can consider further mitigating evidence. The judge in Wilson's case on remand actually did let Wilson make a brief record showing that there was potential mitigating evidence, but with or without such evidence, the judge could do nothing except order a life sentence.

### B. From *Roper* to *Graham* to *Miller*

*Roper v. Simmons*, using a "categorical" analysis, held that assessment of the death penalty for an offender who committed a homicide when he or she was a juvenile violated the Eighth Amendment. The categorical approach in *Roper* rested largely on the conclusion that there were mitigating factors so consistently characteristic of youth that it could be said, across the board, that juveniles were inherently less "morally culpable" than adults, at least to the extent that the death penalty would be an excessive punishment. *See Roper*, 543 U.S. at 569-570, 125 S.Ct. at 1195. *Graham* took the empirical concepts recognized in *Roper* and applied them to a case where the death penalty did not apply, using a categorical analysis.

In *Miller* there was a significant shift in analysis, moving beyond a categorical analysis to an approach whereby individualized mitigating factors also were to be

7

considered. *Miller* stated that life without parole, as applied to a juvenile, "implicate[s] two strands of precedent reflecting our concern with proportionate punishment." The first "strand" consisted of cases, such as *Roper* and *Graham*, which "adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of the penalty." The second "strand" consisted of "cases [where] we have prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death." That "strand" consists of cases such as *Lockett*, *Eddings*, *Penry*, and *Mills*. It was "the confluence of these two lines of precedent," *Miller* declared, that "leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment."

This "confluence" was a major change in the Supreme Court's thinking. It introduced the idea that consideration of mitigating factors relating to an individual defendant was an Eighth Amendment requirement in a case where the death penalty was not assessed (and could not be assessed, due to *Roper*). *Miller* departed from *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), wherein the Supreme Court declined to extend the Eighth Amendment right to consideration of mitigating evidence to non-death penalty cases. The majority opinion in *Miller* found that *Harmelin* was distinguishable because *Harmelin* did not deal

8

with a child.

## C. The Flawed Texas Response to *Miller*

As noted earlier, the Texas Legislature responded to *Miller* only by jettisoning the preclusion of parole. This Court held in *Lewis and Nolley* that the new statute applied to defendants in the appellate pipeline when the new statute was enacted. Noting that *Miller* concerned a life sentence *without* the possibility of parole, this Court rejected the view that an automatic, mandatory life sentence which made parole a possibility only in the distant future was incompatible with *Miller*.

When the Court of Appeals again took up Wilson's case, it looked to *Lewis and Nolley* and to its decision in *Lewis v. State, supra* (Mem. Opin., pp. 3-4). The Court of Appeals construed *Miller* as only barred a juvenile tried as an adult from being sentenced to life without parole. Like this Court in *Lewis and Nolley*, the Court of Appeals was simply following the current statute, which is the real source of the problem.

A focus on whether or not parole becomes available, and when that occurs, misses the key point of the second strand of *Miller*. Under the current Texas law, there is no mechanism whereby a judge or jury can hear mitigating evidence – whether the kind of universal concerns discussed in *Roper* or individualized mitigating evidence – and then take it into account to arrive at a punishment, chosen from a punishment range, which is properly tailored to the individual defendant.

9

## D. The Illusory Benefit of Parole in Forty Years

There is less to the availability of parole, forty or more years in the future, than meets the eye. *Graham*, 130 S.Ct. at 2032, observed:

> Life in prison without the possibility of parole gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope. Maturity can lead to that considered reflection which is the foundation for remorse, renewal, and rehabilitation. A young person who knows that he or she has no chance to leave prison before life's end has little incentive to become a responsible individual.

*Graham* continued:

> A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

*Id.* at 2034. Other portions of *Graham* indicated that a juvenile must have a chance to "demonstrate growth and maturity." *Id.* at 2029-2030.

In light of the foregoing concerns in *Graham*, a parole review in the distant future is little better than no parole at all. There is no guarantee of parole on the first review, the second review, or on any review before an inmate dies. Furthermore, what type of "fulfillment outside prison walls" would be possible for someone who had spent his entire adult life, up to that point, in prison?

Worst of all, however, is the fact that the mere possibility of parole, forty years in the future, may be meaningless. Much of the evidence which might help an inmate obtain parole will not be available for the parole board's consideration because it was

10

not gathered at the time of trial. Examples of evidence which might no longer be available in the distant future could include testimony from family members, friends, teachers, coaches, ministers, and others who know a defendant. And school and mental health records. Forty years after the trial, the likelihood of being able to recreate such evidence as part of the parole process is very poor. Only the utilization of a punishment hearing, at the time of trial, would make a difference.

## REASONS FOR REVIEW OF QUESTION TWO

**Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate TEX. CONST. Art. I, §13?**

The punishment assessed also violated the Eighth Amendment's Texas constitutional counterpart, namely TEX. CONST. Art. I, §13. The Texas Constitution may provide greater protection than the United States Constitution. *Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991), citing *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), pointed out that "a state is free as a matter of its own law to impose greater restrictions on police activity than those the Supreme Court holds to be necessary upon federal constitutional standards."*Id.* at 683. What was said in *Heitman* about "police" (executive department) action also applies to legislation.

The literal text of TEX. CONST. Art. I, §13 provides a reason for recommending relief under Texas law, even if relief were not justified under the

11

Eighth Amendment. This article reads in pertinent part: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted ...."

Thus the Texas Constitution refers to "cruel *or* unusual" punishment, rather than "cruel *and* unusual" as used in the Eighth Amendment. The use of "or" in the Texas Constitution means a sentence may be unconstitutional if it is *either* cruel or unusual.

The Court of Appeals cited *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997) as establishing that this Court had never found the textual differencebetween the two constitutions to be significant (Mem. Opin., pp. 4-5). This Court can do so now, however, by looking to statutory law concerning principles of construction for guidance. A provision of the "Code Construction Act," found in TEX. GOVT. CODE §311.021(2), states that: "In enacting a statute, it is presumed that ... the entire statute is intended to be effective." Furthermore, in *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1993), this Court stated:

> We generally presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Morter v. State*, 551 S.W.2d 715, 718 (Tex. Crim. App. 1977), quoting *Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587, 591, 298 S.W.2d 93, 96 (1957).

Every word of the Texas Constitution – even the simple word "or" – merits the same respect as the words of a statute.

Most persons would believe it is "cruel" if imposition of a life sentence on a juvenile occurred without any consideration of either the factors common to all

12

teenagers, or without any consideration of particular mitigating circumstances. A mandatory, automatic punishment also is unusual. Texas law has only three situations with such fixed punishments. Thus there is a sound textual basis in the Texas Constitution for striking down the mandatory sentence.

## REASONS FOR REVIEW OF QUESTIONS THREE AND FOUR

**Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate the due process clause of U.S. CONST. Amend. XIV?**

**Did the Court of Appeals err in holding that the mandatory and automatic life sentence, with parole eligibility in forty years, did not violate the due course of law provision of TEX. CONST. Art. I, §19?**

The last two questions can be considered together.

## A. The "Due Process Right to Be Heard"

While the Eighth Amendment was the focus in *Miller*, an alternative reason for not applying the amended Texas statute can be found in the due process clause of U.S. CONST. Amend. XIV. The Supreme Court has long recognized that, even in civil matters where only property rights (not personal liberty) are involved, due process requires a fair opportunity for a party to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) stated:

> The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed.2d 817 (1951)(Frankfurter, J., concurring). The fundamental requirement of due process is the opportunity to be heard "at a

13

meaningful time and in a meaningful manner." *Armstrong v Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

*Mathews* implies that "the stigma and hardships of a criminal conviction" would present an even more compelling reason for assuring a "right to be heard."

The due-process requirement of a fair opportunity to be heard is particularly applicable with respect to statutes with mandatory provisions. In *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971) and *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1970), the Court held that there had to be some mechanism whereby evidence which could justify an exception to a mandatory regulatory provision could be presented and considered.

In *Stanley* an unwed father was denied an opportunity to dispute the application of an Illinois statute which automatically made the children of unwed parents wards of the state upon the death of their mother. That amounted to a statutory presumption that Stanley was an unfit parent, regardless of what facts Stanley might have provided. The Supreme Court held that due process required that Stanley be given a hearing on the factual question of his fitness for a parent. The Texas sentencing law similarly rests on a presumption that mitigating facts do not matter.

In *Bell* a licensed but uninsured driver in Georgia had been denied an opportunity to contest the suspension of his license, based on a statute which made suspension automatic for uninsured motorists after an accident, regardless of who was

14

at fault, or to what degree. The Supreme Court, drawing upon earlier case law, declared that a driver was entitled to a hearing which was "meaningful" and "appropriate to the nature of the case." 402 U.S. at 541-542.

## B. The Texas Counterpart to Due Process

The Texas constitutional counterpart of Fourteenth Amendment due process is the "due course of the law" provision in TEX. CONST. Art. I, §19. That section provides: "No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land." Again, the wording is a little bit different, as the Texas Constitution guarantees "the due course of the law of the land."

In *Lewis, supra,* the Court of Appeals concluded that the Texas constitutional protection is coextensive with that of the Fourteenth Amendment. *Fleming v. State,* 376 S.W.3d 854, 857 (Tex. App. – Fort Worth 2012) stated that "this court and the majority of Texas courts of appeals" held that view. Accordingly, the finding of due-process violations in *Stanley* and *Bell* are persuasive, though not mandatory, authority for the conclusion that a mandatory statute which provides no "meaningful opportunity" for consideration of individual mitigating circumstances would violate Art. I, §19.

## C. The Court of Appeals' Error

The Court of Appeals echoed its earlier conclusion in *Lewis, supra* that *Stanley*

15

and *Bell* were distinguishable (Mem. Opin., pp. 4-5). If anything, the distinction between civil or administrative proceedings, on the one hand, and a Capital Murder case, on the other, cuts in favor of Wilson. In the civil realm, the scope of the "right to be heard" focuses on whether a "pre-deprivation" hearing is required or whether a "post-deprivation" hearing suffices. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 s.cT. 1487, 84 L.Ed.2d 494 (1985). If the right at issue is personal freedom, confinement in prison definitely is a "deprivation." A punishment hearing at trial would be a "pre-deprivation" review, while a parole hearing almost four decades later clearly is "post-deprivation."

The position taken in *Stanley* and *Bell*, based on the Fourteenth Amendment, dovetails with the statements in *Graham* and *Miller*, based on the Eighth Amendment, about the need for an effective mechanism for presentation and consideration of mitigating evidence. This is an instance in which the various constitutional rights, like a team of strong horses, should pull together.

## PRAYER FOR RELIEF

Wherefore the appellant prays that discretionary review be granted as to all questions presented.

Respectfully submitted,

/s/ Danny K. Easterling
Danny K. Easterling
Easterling & Easterling, PC
Texas Bar No. 06362100
1018 Preston, 6th Floor
Houston, TX 77002
Tel.: (713)228-4441
E-mail: eaepc@swbell.net

Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that this petition was prepared using Wordperfect with fourteen-point font, and twelve-point font for footnotes, in Times New Roman typeface. Omitting the portions not included for the word limit, this petition contains 3410 words.

/s/ Danny K. Easterling
Danny K. Easterling

## CERTIFICATE OF SERVICE

I certify that copies of this petition have be en served on counsel for the State

at the following addresses on June 17, 2015:

Harris County District Attorney's Office       Hon. Lisa McMinn
Appellate Division                             State Prosecuting Attorney
Attention: Bridget Holloway                    P.O. Box 12405
1201 Franklin, Suite 600                       Austin, TX 78711
Houston, TX 77002

/s/ Danny K. Easterling
Danny K. Easterling

18

Affirmed and Memorandum Opinion filed April 16, 2015.



In The

# Fourteenth Court of Appeals

## NO. 14-14-00015-CR

### HERBERT RAY WILSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1133069**

## MEMORANDUM OPINION

Appellant Herbert Ray Wilson was convicted of capital murder and sentenced to life in prison with the possibility of parole. He challenges his sentence on the ground that the denial of an individualized sentencing hearing violates the United States and Texas Constitutions. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was convicted of capital murder and sentenced to life in prison without the possibility of parole. On original submission, appellant argued that (1) his confession was involuntary, and (2) a mandatory sentence of life without the possibility of parole violated the Eighth Amendment because he was a juvenile at the time of the offense. This court affirmed appellant's conviction and sentence. *Wilson v. State*, 348 S.W.3d 32, 44 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). On petition for writ of certiorari, the United States Supreme Court vacated the judgment and remanded the case for further consideration in light of *Miller v. Alabama*, 567 U.S. —, 132 S. Ct. 2455 (2012). *Wilson v. Texas*, — U.S. —, 133 S. Ct. 108, 108 (2012). In view of *Miller*, this court remanded the case to the trial court for a new punishment hearing. *Wilson v. State*, No. 14-09-01040-CR, 2012 WL 6484718, at *2 (Tex. App.—Houston [14th Dist.] Dec. 13, 2012, no pet.) (not designated for publication). While the case was on remand, the legislature amended Texas Penal Code section 12.31(a) to read as follows:

> (a)    An individual adjudged guilty of a capital felony in a case in which the state seeks the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for life without parole or by death. An individual adjudged guilty of a capital felony in a case in which the state does not seek the death penalty shall be punished by imprisonment in the Texas Department of Criminal Justice for:
>
> (1)    life, if the individual committed the offense when younger than 18 years of age; or
>
> (2)    life without parole, if the individual committed the offense when 18 years of age or older.

Tex. Penal Code Ann. § 12.31(a) (West Supp. 2014).[1] On December 12, 2013, the

---

[1] The 2013 Session Laws amending this section in response to *Miller v. Alabama* include a savings clause making it applicable to cases pending and on appeal when the provision went

2

trial court sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for life with the possibility of parole in 40 years. *See* Tex. Gov't Code Ann. § 508.145(b) (West Supp. 2014). Appellant timely appealed.

## ANALYSIS

In four issues, appellant contends that Texas Penal Code section 12.31(a)(1) violates both the United States and Texas Constitutions because it does not provide for individualized sentencing hearings. We consider each issue in turn.

### A. The denial of an individualized sentencing hearing did not violate the Eighth Amendment.

In his first issue, appellant claims that under the Eighth Amendment, a juvenile offender is entitled to an individualized sentencing hearing before being assessed a mandatory sentence of life imprisonment with the possibility of parole. Under *Miller*, a sentencing scheme for juvenile offenders that mandates life in prison without the possibility of parole violates the Eighth Amendment. 132 S.Ct. at 2469. Noting that *Miller* did not forbid mandatory sentencing schemes per se, the Court of Criminal Appeals refused to extend the holding in *Miller* to situations identical to the one presented here: a mandatory sentence for a juvenile offender of life in prison with the possibility of parole. *Lewis v. State*, 428 S.W.3d 860, 863 (Tex. Crim. App. 2014); *see Turner v. State*, 443 S.W.3d 128, 129 (Tex. Crim. App. 2014) (per curiam); *Lewis v. State*, 448 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The court held that juvenile offenders sentenced to life imprisonment with the possibility of parole are not entitled to

---

into effect on July 22, 2013. Act of July 11, 2013, 83rd Leg., 2d C.S., ch. 2, § 3, 2013 Tex. Gen. Laws 5020, 5020–21; *see Lewis v. State*, 428 S.W.3d 860, 863 n.6 (Tex. Crim. App. 2014).

3

individualized sentencing hearings. *Lewis*, 428 S.W.3d at 864. We are bound in criminal cases to follow decisions of the Court of Criminal Appeals. *Lewis*, 448 S.W.3d at 146. Appellant's first issue is overruled

**B.     The denial of an individualized sentencing hearing did not violate the Due Process Clause.**

In his second issue, appellant claims that under the Due Process Clause, a juvenile sentenced to life with the possibility of parole is entitled to an individualized sentencing hearing. A number of Texas Courts of Appeals, including this one, have determined mandatory sentencing statutes generally do not violate due process. *Id.* at 147; *see e.g.*, *Laird v. State*, 933 S.W.2d 707, 715 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (mandatory life sentence for capital murder did not violate due process); *Cardona v. State*, 768 S.W.2d 823, 827 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (mandatory sentence for delivery of cocaine did not violate due process). Because appellant offers no reason for deviating from this line of cases, we overrule his second issue.

**C.     The denial of an individualized sentencing hearing did not violate the "cruel or unusual punishment" prohibition of article I section 13 of the Texas Constitution.**

In his third issue, appellant claims that under the "cruel or unusual punishment" prohibition of article I section 13 of the Texas Constitution, a juvenile offender is entitled to an individualized sentencing hearing before being assessed a mandatory sentence of life imprisonment with the possibility of parole. *See* Tex. Const. art. I, § 13. Appellant asserts that rights under article I section 13 of the Texas Constitution should be interpreted more broadly than rights under the Eighth Amendment. In support of this proposition, appellant notes that article I section 13 prohibits "cruel *or* unusual punishment" while the Eighth Amendment prohibits "cruel *and* unusual punishment." The Court of Criminal Appeals has rejected the

4

distinction appellant proposes. *See Cantu v. State*, 939 S.W.2d 627, 639 (Tex. Crim. App. 1997). Therefore, an analysis of this issue under the Texas Constitution is identical to an analysis under the United States Constitution. As we have previously determined that appellant is not entitled to an individualized sentencing hearing under the Eight Amendment, we overrule his third issue.

**D.      The denial of an individualized sentencing hearing did not violate article I section 19's "due course of law" guarantee.**

In his fourth issue, appellant claims that under Texas Constitution article I section 19's "due course of law" guarantee, a juvenile sentenced to life with the possibility of parole is entitled to an individualized sentencing hearing. We have already concluded that the denial of an individualized hearing did not violate appellant's due process rights under the Fourteenth Amendment. Texas courts consistently have found no distinction in this context between the rights afforded by the "due course of law" clause of article I section 19 and those afforded by the Due Process Clause of the Fourteenth Amendment. *See Lewis*, 448 S.W.3d at 147. Appellant offers no discernable reason for finding a distinction in this case. Accordingly, we overrule this issue.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the trial court's judgment.

/s/      Marc W. Brown
Justice

Panel consists of Justices Jamison, Busby, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

5

April 16, 2015



# JUDGMENT

# The Fourteenth Court of Appeals

### HERBERT RAY WILSON, Appellant

NO. 14-14-00015-CR                    V.

### THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgment. The Court orders the judgment **AFFIRMED**.

We further order this decision certified below for observance.