PD-0733-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/23/2015 1:45:58 PM
Accepted 7/24/2015 11:03:09 AM
ABEL ACOSTA
CLERK

**NO. PD-0733-15**

**COURT OF CRIMINAL APPEALS**

***TEXAS RULES OF APPELLATE PROCEDURE*, RULE 68.4**

---

**JUSTIN McGEE**

**v.**

**THE STATE OF TEXAS**

---

**On Petition for Discretionary Review
from the Fourteenth Court of Appeals in
No. 14-14-00067-CR Affirming the
Conviction in No. 1387993 from the
262nd Judicial District Court
of Harris County, Texas**

---

**APPELLANT'S PETITION FOR
DISCRETIONARY REVIEW**

---

FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

ABEL ACOSTA, CLERK

**ALLEN C. ISBELL
2016 Main St., Suite 110
Houston, Texas 77002
713-236-1000
Fax No. 713-236-1809
STATE BAR NO. 10431500
Email: allenisbell@sbcglobal.net**

**COUNSEL ON APPEAL**

## NAMES AND ADDRESSES OF ALL PARTIES
## AT THE TRIAL COURT'S FINAL JUDGMENT

Trial Judge

    Honorable Terry Flenniken, Visiting Judge Presiding
    262nd District Court
    1201 Franklin, 15th Fl., Houston, Texas 77002

Appellant/Defendant

    Mr. Justin McGee
    #1902890
    Robertson Unit, 12071 FM 3522, Abilene, Texas 79601

Appellant's Counsel

    Mr. Allen C. Isbell - Counsel on Appeal
    2016 Main St., Suite 110, Houston, Texas 77002

    Mr. R. P. "Skip" Cornelius - Counsel Attorney at Trial
    2028 Buffalo Terrace, Houston, Texas 77019

Attorneys for the State of Texas

    Ms. Kelli Johnson - Assistant District Attorney at Trial
    1201 Franklin, 6th Fl., Houston, Texas 77002

    Mr. Hans T. Nielsen - Assistant District Attorney at Trial
    1201 Franklin, 6th Fl., Houston, Texas 77002

    Mr. Alan Curry - Assistant District Attorney on Appeal
    1201 Franklin, Ste. 600, Houston, Texas 77002

# TABLE OF CONTENTS

**PAGE**

Names and Addresses of All Parties at the Trial Court's Final Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Ground for Review Number One**
**Whether extraneous offense evidence offered to prove motive is automatically admissible under *Texas Rules of Evidence*, Rule 404(b), even when motive is not a contested issue.** . . . . . . . . . . 1

**Ground for Review Number Two**
**Whether the court of appeals is correct in concluding that the trial court does not abuse its discretion by admitting evidence of an extraneous drug transaction between the parties to prove motive when the State has direct evidence to show motive.** . . . . . . . . . . 2

Reason for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Brief Statement of Pertinent Facts . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Brief Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

# INDEX OF AUTHORITIES

**CASES**                                                             **PAGE**

*Lane v. State, 933 S.W.2d 505* (Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . 5

*Morgan v. State*, 692 S.W.2d 877, 880 (Tex.Crim.App. 1985) . . . . . . . . . 5

*Pavlacka v. State*, 892 S.W.2d. 897 (Tex.Crim.App. 1994) . . . . . . . . . . . 5

*Prior v. State,* 647 S.W.2d 956, 959 (Tex.Crim.App. 1983) . . . . . . . . . . . 5

*Rankin v. State*, 974 S.W.2d 707 (Tex.Crim.App. 1996) . . . . . . . . . . 2, 4-5

**STATUTES**

*Texas Rules of Appellate Procedure*, Rule 66.3(b) and (c) . . . . . . . . . . . . 2

*Texas Rules of Evidence*, Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is waived.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

COMES NOW JUSTIN McGEE, appellant in the above entitled and numbered cause, by and through his appointed counsel, ALLEN C. ISBELL, and petitions the Court of Criminal Appeals to review the opinion by the Fourteenth Court of Appeals, and respectfully shows this Court the following in support of his petition.

## Statement of the Case

This appeal is from a conviction for Capital Murder arising out of the 262nd District Court of Harris County, Texas, the Honorable Terry Flenniken, Visiting Judge Presiding. The jury found appellant guilty. The judge assessed punishment at LIFE imprisonment in the Texas Department of Criminal Justice, Institutional Division.

## Statement of Procedural History

The Fourteenth Court of Appeals handed down an opinion affirming the conviction on May 28, 2015. Appellant filed a Motion for Extension of Time to file the petition. This petition is filed within the time allowed by law.

## Ground for Review Number One

**Whether extraneous offense evidence offered to prove motive is automatically admissible under *Texas Rules of Evidence*, Rule 404(b),**

**even when motive is not a contested issue.**

## Ground for Review Number Two

**Whether the court of appeals is correct in concluding that the trial court does not abuse its discretion by admitting evidence of an extraneous drug transaction between the parties to prove motive when the State has direct evidence to show motive.**

## Reason for Review

The Court of Appeals has rendered an opinion interpreting *Texas Rules of Evidence*, Rule 404(b) that conflicts with the rationale of this Court in *Rankin v. State*, 974 S.W.2d 707 (Tex.Crim.App. 1996). The specific question is whether extraneous offense evidence offered to show motive pursuant to *Texas Rules of Evidence*, Rule 404(b) is admissible when there is no contested fact of consequence to which it is relevant, or when there is direct evidence to prove motive. This is an important question of State law that has not been, but should be, settled by this court. *Texas Rules of Appellate Procedure*, Rule 66.3(b) and (c).

## Brief Statement of Pertinent Facts

Appellant was charged with the offense of capital murder either by committing the murder of Cameron Dansby during the course of a kidnaping

or during the course of a robbery (C.R. I, 5).  Before introducing the testimony of co-defendant Richard Bartholomew, who testified for the prosecution, the State introduced evidence of an extraneous drug transaction that occurred two weeks prior to the alleged offense . Appellant objected that the evidence was not relevant in this case and was unduly prejudicial (R.R. 4, 31).

At trial and on appeal, the State took the position that such extraneous offense evidence is relevant to show motive, and it is always admissible under *Texas Rules of Evidence,* Rule 404(b)(R.R. 4, 126)(State's Brief, pp. 9-10). Before overruling appellant's objection, the trial court did not ask whether the State had direct evidence to show motive, nor did it make any other inquiries to determine relevancy and admissibility (R.R. 4, 131-132).  The Fourteenth Court of Appeals noted that the State spent more than a minimal amount of time developing this evidence through the testimony of many witnesses (Memorandum Opinion, p. 8).

The State called co-defendant Bartholomew who gave direct evidence regarding the motive for the capital murder.  He testified that they  planned to rob Cameron Dansby and his friends of  drugs.  Dansby was kidnaped to find out where the stash of  drugs was  kept (R.R. 5, 195).  Dansby was killed because he did not give them that information.  Also, Bartholomew testified

that Dansby was killed because appellant feared that Dansby's friends would come after them, if Dansby told them about the planned robbery (R.R. 5, 193, 202-203, 209-210). Even if motive were a contested issue, the State knew it had an accomplice witness who was going to explain the motive for the capital murder of Cameron Dansby.

**Brief Argument**

The second sentence in *Texas Rules of Evidence, Rule 404(b)* allows for the introduction of evidence of other crimes, wrongs or acts for purposes other than showing character conformity, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or fact.

Motive is not a required element of any criminal offense, but it may aid in establishing proof of an alleged offense. In *Rankin v. State*, 974 S.W.2d 707, 709-710 (Tex.Crim.App. 1996) the Court of Criminal Appeals explained that the mere fact that a party offers such evidence for a purpose other than character conformity does not, in itself, make that evidence admissible. Admissibility of Rule 404(b) evidence hinges on the relevancy of that evidence to a "fact of consequence." A "fact of consequence" is either an elemental fact or an evidentiary fact from which an elemental fact can be inferred.

In *Rankin*, the Court of Criminal Appeals followed the rationale in *Morgan v. State*, 692 S.W.2d 877, 880 (Tex.Crim.App. 1985)*; Prior v. State, 647 S.W.2d 956, 959 (Tex.Crim.App. 1983); Lane v. State, 933 S.W.2d 505* (Tex.Crim.App. 1996); *and Pavlacka v. State*, 892 S.W.2d. 897 (Tex.Crim.App. 1994), holding that when the State's direct evidence shows the elemental fact of intent or identity, and that evidence is not contradicted or undermined, the offer of other crimes is unjustified due to lack of relevancy.

The opinion in the instant case merely examined how the extraneous offense evidence explained the co-defendant's direct testimony concerning motive, and showed that appellant was acting in accordance with his criminal propensities. There was no contested fact of consequence to which the extraneous offense evidence was relevant. The focus of the appellate court should have been on how the evidence was relevant to show a contested fact of consequence in the case, not simply on how the evidence tended to show a common plan or scheme.

### Conclusion and Prayer

Appellant prays that this Court grant his Petition for Discretionary Review. Following the grant of review, Appellant prays that this Court reverse the judgment of the Court of Appeals.

Respectfully submitted,

*/s/ Allen C. Isbell*
ALLEN C. ISBELL
2016 Main St., Suite 110
Houston, Texas 77002
713-236-1000
Fax No. 713-236-1809
STATE BAR NO. 10431500
Email: allenisbell@sbcglobal.net

COUNSEL ON APPEAL

## Certificate of Service

I hereby certify that on this 23rd day of July, 2015, a true and correct copy of the foregoing was sent to the District Attorney's Office, Appellate Division, to the State Prosecuting Attorney and to Mr. Justin McGee, appellant.

*/s/ Allen C. Isbell*
ALLEN C. ISBELL

## Certificate of Compliance

The undersigned attorney on appeal certifies this petition is computer generated and consists of 1,153 words. Counsel is relying on the word count provided by the Word Perfect computer software used to prepare the petitoin.

*/s/ Allen C. Isbell*
ALLEN C. ISBELL

**Affirmed and Memorandum Opinion filed May 28, 2015.**



In The

# 𝕱𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝕮𝔬𝔲𝔯𝔱 𝔬𝔣 𝕬𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-14-00067-CR

**JUSTIN MCGEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1387993**

# M E M O R A N D U M   O P I N I O N

In this capital-murder case we address whether the trial court abused its discretion in admitting into evidence testimony regarding a previous drug transaction between the complainant and the defendant. We also assess the harm, if any, resulting from the trial court's refusal to charge the jury on accomplice-witness testimony. We affirm.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Cameron Dansby, the complainant, and Dominick Sean McDonald sold marijuana to appellant Justin McGee and appellant's associate, Anthony Avalos. The complainant met appellant and Avalos in the parking lot of the Chesterfield apartment complex, where McDonald kept an apartment.  The complainant delivered the drugs to appellant and Avalos in July 2011 (hereinafter "the July transaction.").  Upon delivery of the drugs, appellant and Avalos claimed they already had paid another associate of the complainant and McDonald.  Believing appellant and Avalos, the complainant returned to McDonald's apartment without payment for the drugs.   After McDonald and the complainant realized appellant and Avalos had not paid anyone, the complainant and McDonald chased appellant and Avalos.  The complainant and McDonald followed appellant and Avalos to Avalos's home.  Once there, the complainant and McDonald drew weapons and confronted appellant and Avalos.  Appellant and Avalos paid for the drugs and the complainant and McDonald left.

A few weeks later, appellant, Avalos, and associates Arthur McSwain, Marquis Cook, Bryant Carter, and Richard Bartholomew (hereinafter "the Associates") returned to the Chesterfield apartment complex and kidnapped the complainant as he was walking toward McDonald's apartment. Appellant, Avalos, and the Associates drove the complainant to a remote location at the back of another apartment complex, where appellant, Avalos, and McSwain shot the complainant dead.

A resident at the Chesterfield complex heard the kidnapping in progress and went to investigate.  The resident heard voices saying "get him, grab him."  The resident walked outside and saw the complainant laying face-down on the ground while three or four other individuals, who were pointing guns at the complainant,

2

kicked the complainant and harassed him as they forced him toward the parking lot. Appellant put a gun into the resident's stomach and asked the resident if the resident wanted to live. The resident replied that he did and appellant told the resident to return to his home.

The same night, the resident saw some of the Associates return to the Chesterfield apartment complex. A female (Brittany Watts) was with them. The female walked up the stairs to McDonald's apartment, spoke briefly with someone at the door, and then ran back down the stairs. As she ran, the individuals fled the premises. Police found the complainant's body the following morning.

The resident informed police about what he had seen. The resident was able to give the police descriptions of the individuals involved in the kidnapping and descriptions of suspicious vehicles he saw at the apartment complex at the time of the kidnapping. McDonald told police about the July transaction with appellant and Avalos and directed the police to Avalos's residence, where the police identified cars matching descriptions given by McDonald and the resident.

Appellant was charged with the offense of capital murder. At appellant's jury trial, the resident identified appellant as the man who had pressed a gun into his stomach. A friend of appellant's, Francisco Segovia, testified that he gave appellant a ride to Avalos's home and then to the Chesterfield apartment complex on the night the complainant was murdered. Segovia testified that he waited outside the complex after dropping off appellant and then followed Avalos's car when he saw Avalos leave. Segovia stated that he followed Avalos's vehicle to another apartment complex and, again, waited outside. This time, Segovia heard gunshots, saw Avalos's car leave, and then followed the car back to Avalos's home. At Avalos's home, Segovia heard Avalos complain that the others had forced the complainant into Avalos's car, which Avalos said was a mistake.

3

According to Segovia, Avalos then asked Segovia and Watts, who was then living in Avalos's home, to return to the Chesterfield apartment complex to knock on a door to see if they could get some marijuana. Segovia saw Watts go up the steps and knock on the door, but, according to Segovia, nobody answered the door.

Richard Bartholomew testified that he was present during the complainant's murder, having accompanied appellant, Avalos and the other Associates to the Chesterfield apartment complex, where he and the others waited for the complainant. Bartholomew testified that when the complainant got out of his car they all ran up and grabbed him. According to Bartholemew, they kept asking the complainant, "Where is the door,"[1] "Where is the dope?" The complainant denied having any knowledge. Bartholomew confirmed the resident's testimony that while these events were unfolding, the resident left his porch and appellant pointed a gun at the resident, telling the resident to go back to his home.

Bartholomew testified that they all drove with the complainant and continued to ask him about "the door" while advising the complainant that they wanted bricks of cocaine. According to Bartholomew, the group pulled into the Forum Park apartment complex, and appellant, Avalos and McSwain took the complainant out of the car and again asked the complainant location of "the door." After the complainant failed to give them the door's location, appellant, Avalos, and McSwain shot the complainant dead. Bartholomew learned from the conversation on the way back to Avalos's home that the complainant had known the others socially and through the July transaction. Bartholomew testified that he suggested to Avalos that the group could have accomplished its goals without killing the complainant, but Avalos rejected the notion, commenting that the

---

[1] The record does not explain what "the door" is. The State argued that "the door" was the door to the apartment where McDonald stored drugs.

4

complainant knew who they were and where they lived. Avalos projected that had they not done what they did, the complainant would have retaliated.

The jury found appellant guilty as charged and the trial court sentenced appellant to life without the possibility of parole.

## II. ANALYSIS

### A. Admitting Evidence of the Extraneous Marijuana Transaction

In his first three issues, appellant asserts the trial court erred in admitting into evidence testimony regarding the July transaction because the evidence was irrelevant, more prejudicial than probative, and prohibited under Texas Rule of Evidence 404(b). Appellate courts review a trial court's ruling on the admissibility of evidence under an abuse-of-discretion standard. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010); *Mayreis v. State*, —S.W.3d—, 2015 WL 1346045, at *6 (Tex. App.—Houston [14th Dist.] 2015, no pet.) Article 38.36 of the Texas Code of Criminal Procedure, which applies in prosecutions for murder, provides in relevant part:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Tex. Code Crim Proc. art. 38.36(a) (West, Westlaw through 2013 3d C.S.). Evidence admissible under Article 38.36 still must meet the requirements of the rules of evidence. *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999).

### 1. Relevance

Appellant argues that the trial court abused its discretion in admitting testimony regarding the July transaction because that testimony is irrelevant.

5

Evidence is relevant if it tends to make the existence of any consequential fact more or less probable than it is without the evidence. Tex. R. Evid. 401; *Moralez v. State*, 450 S.W.3d 553, 569 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Extraneous-offense evidence is relevant if it logically makes elemental facts, such as intent or knowledge more or less probable, or if it makes the defense's evidence attempting to undermine these elemental facts more or less probable. *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1991) (op. on reh'g). Appellant argues the July transaction is irrelevant because it does not make any elemental facts more or less probable.

The trial court did not abuse its discretion by implicitly concluding that the July transaction is relevant for several reasons. First, the July transaction gives some context to the relationship between appellant and the complainant. Second, it explains Bartholomew's testimony that appellant and his associates were asking the complainant to inform them of the location of "the door," as well as Bartholomew's testimony that Avalos said the complainant knew appellant, Avalos, and the Associates and knew where they lived. Third, the July transaction demonstrates appellant's and Avalos's willingness and interest in using dishonest tactics to get drugs for free. All of these facts make the existence of consequential facts more likely than they would be without the evidence of the July transaction. The trial court did not err in determining that evidence of the July transaction is relevant to the charged offense. *See Hernandez v. State*, 171 S.W.3d 347, 360–61 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

### 2. *Potential for Prejudice*

Appellant argues the trial court abused its discretion in admitting evidence of the July transaction because the probative value of the evidence was substantially outweighed by its potential prejudice under Texas Rule of Evidence 403. We

6

presume for the sake of argument that appellant preserved error on this complaint in the trial court. Texas Rule of Evidence 403, entitled "Exclusion of Relevant Evidence on Special Grounds," states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex.R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389; *Moralez*, 450 S.W.3d at 569. A proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *De La Paz v. State*, 279 S.W.3d 336, 349 (Tex. Crim. App. 2009); *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

Appellant asserts the evidence regarding the July transaction prejudiced the jury because it showed the jury that appellant had a "corrupt nature" and that he is a drug dealer or drug user. Appellant's participation in the July transaction evinces both his willingness to engage in dishonest tactics and his interest in obtaining drugs. The evidence of the extraneous offense is probative because it compels one to conclude that several facts of consequence are more probable. *See Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000). And, there is substantial evidence that appellant committed the extraneous offense. *See id.* (holding that the first factor is related to the strength of the evidence that appellant in fact committed the extraneous offense). Several witnesses confirmed that the event occurred and that appellant was a participant. The July transaction demonstrates appellant's

relationship to the complainant and shows that appellant had tried to take drugs from the appellant before without paying for them, but that appellant did not have all the information necessary to commit a robbery. It therefore explains why appellant and his associates were asking the complainant the location of the "door." This explanation makes Bartholomew's testimony that appellant was involved in kidnapping appellant more probable. The information also makes Bartholomew's testimony that Avalos concluded it was necessary to kill appellant more probable because it explains how the complainant knew Avalos and appellant, and it shows the complainant's willingness to retaliate against Avalos and appellant. The first factor weighs heavily in favor of finding that the probative value of the evidence is not substantially outweighed by its potential to cause prejudice.

The second and third factors weigh in favor of finding the evidence prejudicial. The evidence that appellant is involved in buying drugs has the potential to impress the jury in an irrational way. And, the State spent more than a minimal amount of time developing the evidence through the testimony of many witnesses.

Under the fourth factor, the State's need to develop evidence of the July transaction was significant. The defense hammered on the lack of physical evidence connecting appellant to the crime. Still, the testimony regarding the July transaction was probative; it provided context necessary to explain the testimony of other witnesses. The testimony established appellant's familiarity with the complainant's drug-selling business and its potential monetary value, as well as appellant's familiarity with the complainant's apartment complex. It also explained appellant's motivation to kidnap and then murder appellant, either to retaliate against the complainant or to rob the complainant and McDonald. The

8

evidence was thus important to explaining the relationship among the parties and to laying out the State's theory of the case, particularly to provide motive — to account for why appellant was driven to commit the murder. We conclude that a balance of the factors shows that the trial court did not abuse its discretion in concluding that the potential for prejudice did not substantially outweigh the probative value of the evidence. *See* Tex. R. Evid. 403, *Hernandez*, 171 S.W.3d at 361.

### 3. Rule 404(b)

Appellant argues the trial court erred in admitting evidence of the July transaction because the evidence was prohibited under Texas Rule of Evidence 404(b). Under Rule 404(b), evidence of an extraneous offense may be admitted if it has relevance apart from its tendency to prove the character of a person in order to show that the person acted in conformity therewith. *See* Tex. R. Evid. 404(b); *Hernandez*, 171 S.W.3d at 360. Evidence has relevance apart from this character-conformity purpose when the evidence tends to establish some elemental fact, such as proof of motive, intent, plan, or absence of mistake or accident. *See* Tex. R. Evid. 404(b); *Hernandez*, 171 S.W.3d at 360.

Appellant argues the State violated Rule 404(b) by using the evidence of the July transaction to show that appellant was a criminal and therefore in murdering the complainant appellant was acting in conformity with his criminal character. We conclude evidence of the July transaction is relevant for other purposes. It supported the State's argument that appellant had a plan, intent, and motive to murder the complainant. Appellant's plan to kidnap made sense only in light of the evidence that appellant was familiar with the complainant's business but needed more information to steal the complainant's drugs. Appellant's intent to kill the complainant made sense in light of the July transaction and Bartholomew's

9

testimony regarding Avalos's summation of the complainant's likely retaliation if the complainant survived the kidnapping. The evidence was admissible under Rule 404(b) because it tended to establish appellant's intent and motivation.

Appellant makes much of the fact that several other witnesses testified that appellant was motivated to rob the complainant and argues the trial court should query the State regarding what direct evidence the State's other witnesses might present regarding the defendant's motive to commit any particular crime. Appellant suggests that the State should not have been allowed to admit this evidence because the State presented direct evidence of appellant's motive. We need not entertain this argument in this appeal, however, because the evidence of the July transaction is necessary to explain the State's direct evidence of appellant's intent and motive. Appellant contends that Bartholomew provided direct evidence of appellant's motive for the kidnapping and murder and that the motive was to force the complainant to disclose the location of cocaine. But, this direct evidence of appellant's immediate reasoning for kidnapping the complainant makes sense only in light of the information about the July transaction. Moreover, although Bartholomew testified that the motivation for the kidnapping was to force the complainant to disclose the location of the cocaine, Bartholomew's testimony regarding the motivation for the murder was different. Bartholomew explained that Avalos was motivated by the fear that the complainant would retaliate if they did not kill him. This statement makes sense only in light of the evidence of the July transaction.

We conclude the evidence of the July transaction was admissible for permissible purposes. *See* Tex. R. Evid. 404(b); *Hernandez*, 171 S.W.3d at 361 (holding that evidence of prior drug transaction was permissible under 404(b) because evidence was necessary to establish relationship in order to prove intent).

10

The trial court did not abuse its discretion in admitting the testimony regarding the July transaction into evidence under Rule 404(b). *See* Tex. R. Evid. 404(b); *Hernandez*, 171 S.W.3d at 361.

Having rejected all of appellant's contentions regarding the admission of the evidence of the July transaction, we overrule issues one, two, and three.

## B. Failing to Give Accomplice-Witness Instruction to the Jury

In appellant's fourth issue, appellant asserts the trial court erred in refusing to charge the jury on Watts as a potential accomplice witness. A conviction cannot be secured upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant to the offense. Tex. Code Crim. Proc. Art. 38.14; *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). The purpose of the accomplice-witness instruction is to remind the jury that it cannot use the accomplice's testimony to convict the defendant unless there also exists some non-accomplice testimony tying the defendant to the offense. *Id.* An accomplice-witness instruction is required if the witness participated with a defendant before, during, or after the commission of a crime, acting with the required culpable mental state or if the witness is liable under a party-conspiracy theory. *Zamora v. State*, 411 S.W.3d 504, 512 (Tex. Crim. App. 2013); *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).

Presuming for the sake of argument that the trial court erred in failing to charge the jury, this court may reverse the conviction only if appellant suffered harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *Lewis v. State*, 448 S.W.3d 138, 143 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The degree of harm required for reversal depends on whether an objection to the error was made at trial. *Id.* If no objection was made, we reverse only if the error resulted in "egregious harm" such that appellant was denied a "fair and impartial

11

trial." *Almanza*, 686 S.W.2d at 171; *Lewis*, 448 S.W.3d at 143. If an objection was made at trial, as in this case, we reverse only if appellant demonstrates "some" harm from the error. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Lewis*, 448 S.W.3d at 143. Whether analyzing the record for some harm or egregious harm, the reviewing court should consider the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Sanchez v.* State, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012). The harm must be actual, not merely theoretical. *Almanza*, 686 S.W.2d at 174.

To measure the sufficiency of the corroborating evidence, we eliminate the accomplice evidence from the record and determine whether the remaining inculpatory evidence tends to connect the defendant to the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). This evidence may be direct or circumstantial. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). The corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt. *Malone v. State*, 253 S.W.3d at 257. Rather, the corroborating evidence need only link the defendant in some way to the commission of the crime. *Id.*

We conclude the record contains sufficient non-accomplice evidence to connect appellant to the commission of the crime. McDonald testified about the July transaction. He knew that appellant was involved in the July transaction and he followed appellant and Avalos back to Avalos's home after the July transaction. The resident identified suspicious vehicles in the apartment complex during the kidnapping, including a champagne-colored Cadillac. The Cadillac belonged to Segovia. Segovia's phone records showed he was in frequent communication with appellant.

The resident specifically identified appellant in court, and to a police officer, as the individual who pressed a gun into his stomach during the kidnapping. Appellant argues that the resident's identification was impeached because appellant did not identify appellant in a prior police lineup, but the resident described several of appellant's identifying features to the police immediately after the incident, including that appellant wore dreadlocks with lighter tips. The resident testified that he was "100%" positive appellant was the person who commanded him at gunpoint to return to his residence. Appellant argued that the resident's identification was not credible because the resident said he could identify appellant based on appellant's tattoo, but the resident explained that the reason he did not pick appellant's picture out of a police lineup was because the tattoo was too prominent in that photo. The resident explained, though, that he remembered the tattoo, but when he was interacting with appellant, appellant's forehead was wrinkled and those wrinkles made the tattoo look less prominent. The resident later saw photos where the tattoo was less prominent and in his review of those photos he identified appellant.

The State also admitted into evidence a note sent to Bartholomew in jail. The handwriting in the note matches handwriting in notes confirmed to have been written by appellant; Bartholomew also testified that the note came from appellant. In the note, appellant asks Bartholomew not to testify and explains that the State's case depends on all of them "sink[ing]" each other. Appellant wrote that he understood that Bartholomew wanted to try to testify against him to get out of jail earlier, but appellant reminded Bartholomew that jail is what comes with being involved in the streets.

Non-accomplice evidence included an eye-witness identification, evidence of a prior relationship between appellant and the complainant and evidence of a

13

motivation for appellant to murder the complainant as well as a note from appellant in which appellant demonstrated an intimate familiarity with the details surrounding the murder. This evidence tends to connect appellant with the commission of the offense. Given the strength of this evidence, we hold that the jury would not have disregarded the accomplice-witness testimony. *See Herron*, 86 S.W.3d at 634. Appellant failed to show that he suffered "some" harm by the failure to include the accomplice-witness instruction. *See Malone*, 253 S.W.3d at 259. Because we conclude that any error by the trial court in failing to charge the jury on the accomplice-witness rule was harmless, we overrule appellant's fourth issue. *See id.*

## III. CONCLUSION

The trial court did not abuse its discretion in admitting into evidence testimony regarding the July transaction. Any error in the trial court's failure to charge the jury on Watts' status as a potential accomplice witness was harmless.

The trial court's judgment is affirmed.


/s/             Kem Thompson Frost
                            Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Do Not Publish — TEX. R. APP. P. 47.2(b).