**Affirmed and Memorandum Opinion filed May 23, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00572-CR

---

**SANTIAGO ESPARZA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1645126**

---

### MEMORANDUM OPINION

Appellant Santiago Esparza, Jr. appeals his conviction for tampering with evidence, namely a human corpse, arguing (1) there is insufficient evidence to prove he concealed the human corpse, and (2) he was egregiously harmed when the trial court erroneously failed to include an accomplice witness instruction in the jury charge. We affirm.

BACKGROUND

Appellant was indicted for the offense of tampering with evidence, namely a human corpse, and a seven-day trial was held starting on July 18, 2022. Evidence presented at trial showed that Priscilla Torres and her five-year-old daughter, Sarah,[1] lived with Priscilla's parents. On August 20, 2019, Priscilla took Sarah to the doctor for a urinary tract infection; Sarah was prescribed antibiotics. The next day, Sarah went to school but had diarrhea, so Priscilla picked her up from school. On August 22, 2019, Priscilla took Sarah back to the doctor because she had diarrhea and was vomiting; the doctor told her to stop giving her antibiotics and to give her Pedialyte. Although Sarah was not feeling well, did not eat or drink much, and complained of stomach pain, Priscilla decided to spend the night with Sarah at Appellant's apartment.

Priscilla's and Appellant's families had been neighbors, but Priscilla had not really talked to Appellant until she and her family were at Appellant's dad's birthday party. In July, Appellant and Priscilla started flirting and Priscilla claimed that Appellant promised to give her "a happy family." When Priscilla went to Appellant's apartment with Sarah on August 22, 2019, she only packed clothes for Sarah because Priscilla planned to only stay overnight. She told her mother that she was not going to come back and that Appellant was treating her and Sarah "like queens." Later, according to Priscilla, she did not leave Appellant's apartment because he had told her she "wasn't going home" and threatened to harm her parents, and she was scared to leave.

During the day on August 23, Sarah continued to not feel well. When

---

[1] Because the victim in this case was a minor, we refer to her using a pseudonym. *See* Tex. R. App. P. 9.10(a)(3).

2

Priscilla was giving Sarah a bath, Appellant told Priscilla that he would bathe Sarah because he wanted Priscilla to cook for him. He told Priscilla that "if we're going to be together you've got to trust me and let me help you do this." When Priscilla went to check on Appellant and Sarah, the bathroom door was locked. Sarah got burned when Appellant bathed her. Sarah did not talk much; she tried to drink, "but her lips were so swollen everything kept coming out." Priscilla did not take Sarah to the doctor because Priscilla claimed that Appellant had told her they would go to jail and CPS would take Sarah if she sought medical help.

The next two days, Sarah continued to deteriorate and "looked terrible." Because the mother of his child was coming for an overnight visit on August 26, 2019, Appellant took Priscilla and Sarah to a vacant apartment where the two spent the night on the floor. During the night, Sarah did not talk and continued to vomit. The next morning when his son and the mother had left, Appellant brought Priscilla and Sarah back to his apartment. Appellant carried Sarah in a blanket because she was unable to walk, was vomiting, "had flies around her," and "had bumps all on her."

Back at Appellant's apartment, Priscilla unwrapped Sarah who had trouble breathing and was gasping for air. Appellant and Priscilla tried to give her antibiotics and applied Neosporin to her skin. Priscilla believed Sarah was dehydrated, so she started bathing her in the bathtub. When Sarah stopped breathing, Appellant performed CPR, but Sarah died. Priscilla stated that Appellant took Sarah's body, placed it on the floor in his closet, and covered it with a blanket. Priscilla claimed she was scared to call police because Appellant "had said that we were both going to go to jail if we called on her about anything." Thereafter, Priscilla and Appellant went to his brother's home.

Appellant and Priscilla did not spend much time at Appellant's apartment

after Sarah died, although they slept there until August 31 and then rented a hotel room. Appellant quit his job as a maintenance man at the apartment complex; he packed up all his clothes and told Priscilla they had to leave the apartment, although they returned to the apartment a few times. Priscilla stated that Appellant had picked the front door lock so no one could put a key inside and open the apartment. When they would return to the apartment, Appellant would climb over the tall patio fence, go through the patio sliding doors, and unlock the front door for Priscilla.

After Priscilla's mother threatened to file a missing person report regarding Sarah on September 2, 2019, Priscilla returned to the apartment by herself and called the police to report Sarah was dead. Officer Jackson arrived shortly thereafter, and he could smell the "very distinctive" smell of a "deceased person." He found Sarah's body covered with a blanket and sheets laying on the floor in Appellant's bedroom closet.

A jury found Appellant guilty of tampering with evidence. The parties stipulated that Appellant had two prior felony convictions. The trial court found both alleged enhancement paragraphs true and assessed Appellant's punishment at forty years' confinement. Appellant filed a timely notice of appeal.

ANALYSIS

Appellant presents two issues on appeal, which we address in turn.

## I. Sufficiency of the Evidence

In his first issue, Appellant contends the evidence is insufficient to prove he concealed Sarah's body.

### A. Standard of Review and Governing Law

Evidence is sufficient to support a criminal conviction if a rational jury

could find each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). We view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted. *Stahmann*, 602 S.W.3d at 577. The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses. *Id*. The jury may choose to believe or disbelieve all or part of a witness's testimony, and we presume the jury resolved any conflicts in the evidence in favor of the prevailing party. *Thomas v. State*, 444 S.W.3d 4, 8, 10 (Tex. Crim. App. 2014); *Green v. State*, 607 S.W.3d 147, 152 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial. *Stahmann*, 602 S.W.3d at 577. "Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction." *Davis v. State*, 586 S.W.3d 586, 589 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).

As applicable in this case, a person commits the offense of tampering with evidence if, knowing that an investigation or official proceeding is pending or in progress, he alters or conceals a human corpse with intent to impair its availability as evidence in the investigation or official proceeding. *See* Tex. Pen. Code Ann. § 37.09(a)(1), (c). When the jury charge authorizes conviction on multiple theories of liability, we will sustain the conviction if the evidence is sufficient to prove any of the theories submitted in the jury charge. *Stahmann*, 602 S.W.3d at 577.

### B.    Application

Appellant contends the evidence is insufficient to prove he actually concealed Sarah's body because "everyone whom Ms. Torres let into the

apartment could see the body under the blanket in the closet." We disagree.

At trial, Priscilla testified that Appellant took Sarah's dead body, placed it on the floor in his closet, and covered it with a blanket. Evidence showed that Appellant put the air conditioning thermostat on 45 degrees, which would slow down the decomposition of Sarah's body. Priscilla testified that because Appellant wanted to prevent the discovery of Sarah's body, he used a chain on the front door, locked the door from inside, and "picked" the front door lock so that no one could open the apartment door. When Appellant and Priscilla would leave the apartment, Appellant would let Priscilla exit through the front door, then he would "pick the lock", exit through the patio sliding door, and jump over the tall patio fence. And to enter the apartment, Appellant would climb over the patio fence, enter the apartment through the patio sliding door, and unlock the front door for Priscilla.

Sarah's body was not discovered until Priscilla called the police. Contrary to Appellant's assertion, body camera video shows that police officers could not see Sarah's body upon entering the apartment. Officers had to walk through the apartment into the master bedroom, turn to the side to get to the closet, open the closet door, and remove a blanket and sheets to see Sarah's body.

Although the tampering-with-evidence statute does not define "conceal," the court of criminal appeals has stated that "[a]n item is concealed if it is 'hidden, removed from sight or notice, or kept from discovery or observation.'" *McPherson v. State*, 677 S.W.3d 663, 665 (Tex. Crim. App. 2023) (quoting *Stahmann*, 602 S.W.3d at 581).

Applying that definition to the present case, legally sufficient evidence establishes that Appellant's placement of Sarah's body covered with a blanket and sheets in his bedroom closet in his locked and inaccessible apartment kept the body "hidden," "removed from sight," and "from discovery and observation," thus

establishing concealment for purposes of the tampering-with-evidence statute. *See McPherson*, 677 S.W.3d at 665; *Stahmann*, 602 S.W.3d at 581. Appellant's concealment is further demonstrated by the fact that Sarah's body was not discovered until Priscilla called the police and revealed the location of the body to law enforcement. *See King v. State*, No. 01-23-00094-CR, 2024 WL 1220546, at *11 (Tex. App.—Houston [1st Dist.] Mar. 21, 2024, no pet. h.) (mem. op., not designated for publication) (concealment was shown when the location of victim's corpse was not discovered until defendant's brother revealed it to police); *see also Barron v. State*, 629 S.W.3d 557, 562-63 (Tex. App.—Eastland 2021, pet. ref'd) (concealment was shown when the location of victims' corpses was not discovered until defendants revealed the location to police); *Barron v. State*, No. 11-19-00128-CR, 2021 WL 1432978, at *1-3 (Tex. App.—Eastland Apr. 15, 2021, no pet.) (mem. op., not designated for publication) (same); *Munsch v. State*, No. 02-12-00028-CR, 2014 WL 4105281, at *8 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op., not designated for publication) (concealment was shown when the location of drugs would not have been known but for driver revealing that passenger threw the drugs out the window after being stopped by police).

Viewing the evidence in the light most favorable to the verdict, we conclude there is sufficient evidence to establish Appellant concealed Sarah's body.

We note that Appellant for the first time in his reply brief argues the evidence is insufficient to prove he knew an investigation was pending. However, an appellant may not raise a new issue in a reply brief because Texas Rule of Appellate Procedure 38.3 allows courts of appeals to decide the matter prior to receiving the reply brief. *Chambers v. State*, 580 S.W.3d 149, 161 (Tex. Crim. App. 2019). In his opening brief, Appellant only argued that the evidence is insufficient to prove he concealed Sarah's body; he never challenged any other

elements. Therefore, we do not consider Appellant's argument raised for the first time in his reply brief. *See* Tex. R. App. P. 38.3; *Chambers*, 580 S.W.3d at 161; *State v. Ford*, 673 S.W.3d 749, 751 (Tex. App.—Waco 2023, no pet.); *Deutsch v. State*, 566 S.W.3d 332, 341 n.9 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Collins v. State*, No. 04-20-00139-CR, 2022 WL 527668, at *4 n.5 (Tex. App.—San Antonio Feb. 23, 2022, no pet.) (mem. op., not designated for publication); *Miller v. State*, No. 01-19-00126-CR, 2020 WL 4590304, at *11 (Tex. App.—Houston [1st Dist.] Aug. 11, 2020, no pet.) (mem. op., not designated for publication).

Accordingly, we overrule Appellant's first issue.

## II. Accomplice Witness Instruction

In his second issue, Appellant asserts he was egregiously harmed by the trial court's failure to instruct the jury that Priscilla was an accomplice as a matter of law and that her testimony must be corroborated.

### A. Error

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14. Therefore, if an accomplice to the offense testifies for the State, such testimony must be corroborated by non-accomplice evidence that tends to "connect the accused to the offense." *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016); *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). Corroborating evidence may be either direct or circumstantial. *Ambrose*, 487 S.W.3d at 593.

An accomplice is one who participates in an offense, before, during, or after

its commission, to the extent that she can be charged with the offense or with a lesser-included offense. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (en banc). A prosecution witness who is indicted for the same offense with which the defendant is charged is an accomplice as a matter of law. *Id*. If a prosecution witness is an accomplice as a matter of law, the trial court must instruct the jury accordingly, and failure to do so is error. *Id*.

Here, Appellant was indicted for the offense of tampering with evidence, and the record shows that Priscilla was indicted for the same offense and pled guilty. Thus, Priscilla was an accomplice as a matter of law, and the trial court's failure to instruct the jury to that effect was error. *See id*.

## B.     Harm

Next, we must determine whether the trial court's error was harmful. To answer this question, we have to examine the effect an accomplice witness instruction has on trial. *Id*. As we stated, article 38.14 provides that a conviction cannot be based on an accomplice's testimony unless the testimony is corroborated by other evidence that tends to connect the defendant to the offense. *Id*.; *see also* Tex. Code Crim. Proc. Ann. art. 38.14. The purpose of an accomplice witness instruction is not to cast suspicion on the testimony provided by accomplice witnesses or to encourage jurors to give less weight to their testimony; instead, the instruction merely reminds the jury that it cannot use the accomplice witness's testimony to convict a defendant unless there also exists some corroborating evidence tying the defendant to the offense. *See Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006); *Herron*, 86 S.W.3d at 632. Once it is determined that such non-accomplice evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the jury's decision-making. *Herron*, 86 S.W.3d at 632. "Therefore, non-accomplice evidence can render harmless a failure

to submit an accomplice witness instruction by fulfilling the purpose an accomplice instruction is designed to serve." *Id*.

Under *Almanza v. State*, the appropriate harm analysis depends upon whether an appellant preserved error by bringing the omission of the instruction from the jury charge to the trial court's attention. 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (en banc) (op. on reh'g); *see also Herron*, 86 S.W.3d at 632; *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991) (en banc). When error is properly preserved, a reversal is required if "some harm" is shown; but when an appellant failed to preserve error, egregious harm must be shown. *Almanza*, 686 S.W.2d at 171; *Lewis v. State*, 448 S.W.3d 138, 144 (Tex. App.— Houston [14th Dist.] 2014, pet. ref'd). The difference in harm standards affects how strong the non-accomplice evidence must be before an erroneous omission of an accomplice witness instruction is considered harmless. *Herron*, 86 S.W.3d at 632.

Egregious harm is the proper standard of review in this case because Appellant admits that he did not request an accomplice witness instruction or bring the omission of such an instruction to the trial court's attention, thus failing to preserve error.

"Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Id*. (quoting *Saunders*, 817 S.W.2d at 692); *Lewis*, 448 S.W.3d at 144. To determine the strength of corroborating evidence, we examine (1) its reliability or believability, and (2) the degree to which it tends to connect the defendant to the offense. *Herron*, 86 S.W.3d at 632; *see also Casanova v. State*, 383 S.W.3d 530, 539 (Tex. Crim. App.

10

2012). "Corroborating evidence that is exceedingly weak—that is to say, evidence that, while it is legally sufficient to tend to connect, is nevertheless inherently unreliable, unbelievable, or dependent upon inferences from evidentiary fact to ultimate fact that a jury might readily reject—may call for a conclusion that the failure to give the accomplice-witness instruction resulted in harm regardless of whether the deficiency was objected to." *Casanova*, 383 S.W.3d at 539.

Here, the non-accomplice evidence is neither weak or insubstantial nor is it unreliable, unbelievable, or contradicted. The jury viewed apartment surveillance video footage which showed Priscilla and Sarah had stayed with Appellant for several days before Sarah's death. Video showed Appellant and Priscilla exiting and entering the apartment through the front door before Sarah's death. Late in the evening on August 26, 2019, Appellant and Priscilla can be seen exiting Appellant's apartment carrying Sarah wrapped in a blanket. About thirty minutes later, the video shows a woman and child being let into Appellant's apartment.

The next morning on August 27, the woman and child can be seen leaving Appellant's apartment. A few minutes later, Appellant and Priscilla can be seen exiting Appellant's truck and Appellant carrying Sarah wrapped in a dark blanket to his apartment while Priscilla is walking behind him. Surveillance video further shows that about two and a half hours later Priscilla exits Appellant's apartment through the front door but Appellant jumps over the tall patio fence, corroborating that Appellant locked the apartment door from the inside to prevent anyone from entering the apartment and discovering Sarah's body. It was undisputed that Sarah died that day.

Video shows Appellant at the apartment complex shaking hands with coworkers in the morning of August 29. The apartment maintenance supervisor testified that Appellant quit his job as a maintenance worker at the apartment

complex on that day. The supervisor also testified that Appellant had stopped working on August 26; according to the supervisor, Appellant had stated his child was sick and he needed to take the child to the doctor. Shortly after resigning from his maintenance job in the morning of August 29, Appellant can be seen by his apartment putting items into his truck, jumping over the patio fence instead of exiting through the front door, and then driving away.

In the early morning of August 30, video shows Priscilla and Appellant in front of his apartment by his truck. Afterwards, Appellant can be seen jumping over the patio fence to leave his apartment. The next morning, video shows Appellant arriving in an SUV, backing it in the walkway of his apartment entrance, and packing things into the trunk — showing that Appellant had moved his things out of the apartment.

Police video of September 2, 2019, showed that Sarah's body, covered with a dark blanket and sheets, was laying on the floor of Appellant's bedroom closet in his apartment. In fact, Officer Jackson's body camera video showed that he walked through Appellant's apartment to Appellant's bedroom, opened the door to the bedroom closet, and had to lift a dark blanket and sheet to see Sarah's decomposed body. Crime scene supervisor Wingert and Detective Lange testified that they had observed candles and air freshener in the living room as well as a lit scented "Scentsy candle" in Appellant's bedroom near the closet. Detective Lange testified that in his investigation he determined the air freshener and scented candle showed an attempt to conceal the smell of Sarah's decomposing body.

The State offered reliable and undisputed corroborating evidence that was indicative of Appellant's guilt while there was no plausible defensive evidence presented. Non-accomplice evidence showed Appellant was not only aware that Sarah died but he kept Sarah's body concealed under a blanket and sheets in his

12

bedroom closet in his locked apartment for almost seven days. Appellant jumping over the tall patio fence to leave his apartment corroborated testimony that he had locked the front door to restrict access by anyone to his apartment, thus preventing discovery of Sarah's body.

Having reviewed the entire record in this case, we find the corroborating evidence presented by the State is not so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. *See Casanova*, 383 S.W.3d at 540; *Herron*, 86 S.W.3d at 632; *Saunders*, 817 S.W.2d at 692. We cannot conclude that Appellant suffered egregious harm from the lack of an accomplice witness instruction.

Accordingly, we overrule Appellant's second issue.

## CONCLUSION

Having overruled Appellant's two issues, we affirm the trial court's judgment.

/s/ Meagan Hassan
Justice

Panel consists of Justices Hassan, Poissant, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).