

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00175-CR

———————————————————

DANIEL LOYA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1775686

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

A jury convicted Appellant Daniel Loya of aggravated assault in retaliation, a first-degree felony, and assessed his punishment, enhanced as a repeat offender, at twenty-five years' imprisonment. *See* Tex. Penal Code Ann. §§ 12.42(c), 22.02(b)(2)(C). In one point, Loya contends that the evidence was insufficient to support his conviction. Because sufficient evidence supports the verdict, we overrule Loya's sole point and affirm the trial court's judgment.

### II. BACKGROUND[1]

John Hanning, a widowed veteran who was eighty-eight years old at the time of trial, was the victim of two drive-by shootings at his home.

In the first shooting, which occurred in February 2022, Hanning was walking down the hallway of his home to go to church when he heard eight to ten shots and realized that he had been shot in the leg. Loya was later linked to and charged with that shooting.

The second drive-by incident occurred a year later, in February 2023. Around 12:30 or 1:00 a.m. on February 2, Hanning was watching television in bed when he heard shots fired. Hanning heard the Venetian blinds to his storm door shatter and

---

[1]Because Loya's sufficiency challenge rests almost exclusively on evidence that he contends refutes the State's evidence, we limit our discussion to those portions of the State's evidence that Loya contested at trial.

thought that two shots went into a bedroom. Hanning's neighbor, after hearing the gunshots, looked outside and saw a Dodge Caravan. Another neighbor's surveillance video showed the suspect Dodge minivan. A detective was later able to determine the minivan's license plate number and further determined that the minivan showed up on surveillance video at the Budget Suites where the police knew Loya lived.

Prior to the 2023 shooting, while awaiting trial in the 2022 case, Loya had jumped bond and was hiding out in a hotel room that his mother had rented. But just a few days after the 2023 shooting, the U.S. Marshals Fugitive Unit located Loya and arrested him based on a warrant related to the 2022 shooting. In a subsequent search of Loya's hotel room, the police found Loya's cell phone and a handgun. A digital forensics examiner who later examined the cell phone was able to place it on Hanning's street—which a video tracking the phone's movement shows was only two blocks long—from 12:37 a.m. until 12:38 a.m. on February 2, 2023, which corresponded to Hanning's estimated time of the shooting. A firearms examiner determined that the handgun recovered from the hotel room was the one used in the shooting. According to the State's theory of the case, Loya was responsible for the 2023 shooting, his motive being retaliation because the charge against him for the 2022 shooting was still pending and because Hanning was a witness to that shooting.[2]

_____

[2]Hanning testified at Loya's trial. Other than confirming that someone had shot at his house twice (wounding him the first time), Hanning said that he had no idea who was responsible for the shootings or why they occurred.

This appeal relates only to Loya's conviction for the second shooting.

At trial for the 2023 shooting, Loya testified. He denied knowing anything about either of the two shootings.

Loya's friend, Jesse Godoy, also testified as a defense witness.[3] According to Godoy, after he learned about Loya's legal troubles due to the 2022 shooting—a shooting that Godoy believed Loya had been falsely accused of committing—he decided to help Loya with his problem by shooting at Hanning's house a second time. And, according to Godoy, he committed this crime without Loya's knowledge or participation. Godoy also explained that the reason he was admitting to this was because he did not want Loya to be convicted of something that Godoy himself had done.

No one disputed that Loya's cell phone was at the scene of the shooting, but Godoy insisted that the reason it was there was because Godoy had taken Loya's jacket to the shooting that night, and, according to Godoy, Loya's cell phone happened to be in the jacket's pocket. When the prosecutor asked Godoy whether the phone had rung while it was in his possession, Godoy provided conflicting testimony, "I remember turning it on because—but I think it was dead. But I do remember—I think there might have been a phone call, but I—I didn't answer. I

_____

[3]On appeal, Loya relies almost exclusively on Godoy's testimony and the theory that Godoy was responsible for the second shooting. The majority of the brief—over twenty pages—is Godoy's verbatim testimony from the trial.

didn't want to answer it." Summing up his testimony, the prosecutor asked, "So it was dead, or [maybe it wasn't], or maybe you answered the call, or something like that," to which Godoy replied, "Yeah, I know I had it, though."

As a rebuttal witness, the digital forensics examiner testified that at or near the time of the offense, several calls were made and received on Loya's cell phone and, more specifically, two calls—one at 12:34 a.m. and the other around 1:00 a.m.—were outgoing calls made to a number listed in the phone as "Mom." Other evidence connected that number to Loya's mother.[4]

Godoy maintained that the gun was his and that he had brought the gun with him from El Paso. But the State offered evidence that a little over twelve hours after the 2023 shooting, text messages were sent from Loya's cell phone trying to sell the gun that was used in the shooting. Loya and Godoy again provided conflicting explanations as to why Loya would be trying to sell Godoy's gun after the shooting. Godoy explained that he told Loya that he needed some extra money and requested that Loya ask around to see if anyone wanted to purchase his gun. Loya, on the other hand, testified that he had told Godoy that he did not want a gun in his home and that he had been telling Godoy that he needed to sell the gun.

_____

[4]The officer who executed the search warrant for the hotel room where Loya was living testified that, while executing the warrant, he had asked Loya's mother to help him locate Loya's phone among several in the room. Although Loya's mother indicated the phone was not present in the hotel room, she offered to call Loya's phone, and when she did, a phone in the room rang and said "Mom" on the screen.

5

During the State's cross-examination of Godoy, the State questioned that if indeed this had been a solo endeavor, as Godoy claimed, how would he have known where Hanning lived. Godoy denied that Loya gave him a street address, but he explained that Loya had told him the street name and had described the house—a description that Godoy no longer remembered at the time of trial—and that he got "lucky" and shot up the correct house. The State then inquired on cross-examination of Loya that if he had not been involved in the 2022 shooting, as he had claimed, how he would have known the location and description of Hanning's house. Loya explained that he learned where the 2022 shooting occurred from his attorney and from watching the news.

It was the opinion of the detective who investigated the 2023 shooting that both Loya and Godoy were involved, although he testified that he was not able to determine who was the shooter and who was the driver. At the conclusion of the trial, the jury was charged on the law of parties. *See* Tex. Penal Code Ann. § 7.01(a) ("A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.").

## III. DISCUSSION

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found

6

the crime's essential elements beyond a reasonable doubt.[5] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all

---

[5]Appellate counsel recites the factual sufficiency standard of review, relying on *Clewis v. State*, 922 S.W.2d 126, 135–36 (Tex. Crim. App. 1996), *overruled by Brooks v. State*, 323 S.W.3d 893, 895, 911–12 (Tex. Crim. App. 2010). As noted in the citation, *Clewis* was overruled more than a decade ago. Counsel's brief, however, does not reflect that *Clewis* was overruled. We have noted *Clewis*'s overruling in previous opinions. S*ee Howard v. State*, No. 02-24-00075-CR, 2025 WL 18308, at *2 n.3 (Tex. App.—Fort Worth Jan. 2, 2025, no pet.) (mem. op., not designated for publication) (same appellate counsel); *Alami v. State*, 333 S.W.3d 881, 885 (Tex. App.—Fort Worth 2011, no pet.) (same appellate counsel).

the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608. Jurors may choose to believe or disbelieve all, some, or none of the evidence presented. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021).

## B. Applicable Law

A person commits an assault if the person intentionally or knowingly threatens another with imminent bodily injury. Tex. Penal Code Ann. § 22.01(a)(2). A person commits an aggravated assault if the person commits an assault under Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(2). And if the aggravated assault is committed "in retaliation against or on account of the service of another as a witness, prospective witness, informant, or person who has reported the occurrence of a crime," the offense is a first-degree felony. *Id.* § 22.02(b)(2)(C).[6]

Under the law of parties, the State can enlarge a defendant's criminal responsibility to include acts in which the defendant may not have been the principal actor. *Bleil v. State*, 496 S.W.3d 194, 202 (Tex. App.—Fort Worth 2016, pet. ref'd). "A person is criminally responsible as a party to an offense if the offense is committed

---

[6]In Loya's case, the indictment alleged that on or about February 2, 2023, Loya intentionally or knowingly threatened Hanning with imminent bodily injury in retaliation against or on account of Hanning's service as a prospective witness and that Loya used or exhibited a deadly weapon during the commission of the assault, namely, a firearm.

by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01(a). A person is criminally responsible for another's conduct if, "acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). The factfinder may look at events occurring before, during, and after the commission of the offense and may rely on the defendant's actions that show an understanding and common design to do the prohibited act. *Padilla v. State*, 698 S.W.3d 589, 594 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd).

### C. Analysis

Loya argues that the evidence is insufficient to support his conviction because Godoy admitted committing the offense without Loya's knowledge or participation and because Loya denied committing the offense. The jury, however, did not have to believe anything that Godoy and Loya said. *See Edward*, 635 S.W.3d at 655. Moreover, other evidence undermined both Godoy's and Loya's credibility and tied Loya to the shooting.

For example, Loya's cell phone was tracked to the scene of the offense at the time of the shooting, which connected Loya's cell phone to the crime scene but not necessarily Loya. *See Robinson v. State*, 368 S.W.3d 588, 601 (Tex. App.—Austin 2012, pet. ref'd). But other evidence placed Loya with his cell phone and, thus, connected him to the shooting. Specifically, someone made calls from Loya's cell phone to

9

Loya's mother between 12:30 and 1:00 a.m on February 2, 2023—the same time frame that, according to Hanning, the shooting occurred.

Because Godoy denied using or answering Loya's phone, his testimony thus could not account for why someone was using Loya's cell phone to make the calls to Loya's mother during the same time frame as the shooting. A reasonable juror could have concluded that Loya was using his cell phone to call his mother and, thus, that Loya was either alone in the car or with Godoy or another person. *See generally Lewis v. State*, 448 S.W.3d 138, 145 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("These farfetched alternatives, however, do not cast any real doubt on the evidence indicating appellant had [committed the offense]."); *Reynolds v. State*, No. 14-00-00557-CR, 2001 WL 664436, at *2 (Tex. App.—Houston [14th Dist.] June 14, 2001, pet. ref'd) (mem. op., not designated for publication) ("[T]he jury clearly did not accept [a witness's] farfetched story [that the cocaine had belonged to him, that he dropped it, and that he just left it on the floor near where the appellant was standing,] and we see no reason to do so on appeal.").

Godoy's and Loya's testimony was further undermined by the question of how they knew where Hanning lived. A jury is permitted to draw reasonable inferences from the evidence presented at trial, provided the evidence produced at trial supports each inference. *Baltimore v. State*, 689 S.W.3d 331, 342 (Tex. Crim. App. 2024). And when drawing those inferences, jurors may use common sense, common knowledge, and personal experience and observations. *Id.* Here, the jury could have drawn the

reasonable inference that Loya knew where Hanning lived because he had been the person who shot at Hanning's house in February 2022. The jury was not obligated to believe Loya's explanation that he knew how to find Hanning's house based on something that his attorney had told him or on a news report that he had watched a year earlier or that Godoy had found Hanning's house based on a street name, a description of Hanning's house that he no longer remembered, and a little luck. *See Edward*, 635 S.W.3d at 655; *Gilmore v. State*, 397 S.W.3d 226, 241 (Tex. App.—Fort Worth 2012, pet. ref'd) ("The jury also could have reasonably construed [the a]ppellant's version of events as implausible, thereby demonstrating a 'consciousness of guilt.'").

Godoy's and Loya's testimony was further discredited and Loya's guilt was further evidenced by Loya's attempts to sell the gun used in the offense shortly after the shooting. The jury could have drawn the reasonable inference that Loya did so because he participated in the shooting and wanted to dispose of incriminating evidence. *See Baltimore*, 689 S.W.3d at 342; *Hammack v. State*, 622 S.W.3d 910, 918 n.33 (Tex. Crim. App. 2021) ("We have noted that certain conduct by a defendant can be construed as circumstantial evidence of consciousness of guilt."); *Moreno v. State*, No. 13-23-00485-CR, 2024 WL 3533412, at *3 (Tex. App.—Corpus Christi–Edinburg July 25, 2024, no pet.) (mem. op., not designated for publication) ("[B]elieving law enforcement had not yet found the gun used, [the defendant] asked an individual to hide his gun for him. This is . . . circumstantial evidence connecting [the defendant]

to the weapon and the weapon's use."). The jury did not have to believe Godoy's and Loya's explanation that Loya's attempt to sell the gun after the shooting was just an unlucky coincidence. *See Lewis*, 448 S.W.3d at 145; *Reynolds*, 2001 WL 664436, at \*2.

Viewing all the evidence in the light most favorable to the verdict, we hold that a rational factfinder could have found that Loya—as either the shooter or a party to the shooting—committed the offense of aggravated assault in retaliation beyond a reasonable doubt.[7] *See Queeman*, 520 S.W.3d at 622; *Padilla*, 698 S.W.3d at 594; *Bleil*, 496 S.W.3d at 202; *see also Walker v. State*, No. 02-23-00346-CR, 2024 WL 3715011, at \*5 (Tex. App.—Fort Worth Aug. 8, 2024, no pet.) (mem. op., not designated for publication) (holding that submitting law of parties when sufficient evidence supports a conviction based on the defendant's actions as a principal is harmless). A rational factfinder could have found that Godoy's explanation for the shooting—helping a friend in need without that friend's knowledge or participation—was less plausible than Loya's motive for the 2023 shooting—to intimidate a witness to the 2022 shooting. Even Godoy admitted that intimidating a witness was the shooting's purpose. Similarly, a rational factfinder could have found that Loya was at the scene of the shooting at the time of the shooting based on Loya's cell phone's being there when the shooting occurred—notwithstanding Godoy's explanation to the contrary.

---

[7]As noted earlier, the jury was charged on the law of parties.

And a rational factfinder could have found that Loya showed consciousness of his own guilt when he, not Godoy, tried to sell the gun used in the shooting immediately after the offense occurred. *See Hammack*, 622 S.W.3d at 918 n.33; *Moreno*, 2024 WL 3533412, at \*3. Although the evidence against Loya is circumstantial, circumstantial evidence is as probative as direct evidence in establishing guilt. *See Mayfield v. State*, 676 S.W.3d 244, 250 (Tex. App.—Fort Worth 2023, pet. ref'd) (citing *Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021)). We overrule Loya's sole issue.

## IV. CONCLUSION

Having overruled Loya's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 21, 2025